640 So.2d 342 (1994)
STATE of Louisiana, Respondent,
v.
Samuel BURTON and Alvin McCreary, Relators.
No. K93-828.
Court of Appeal of Louisiana, Third Circuit.
February 23, 1994.
Stay Denied; Writ Denied April 7, 1994.
*344 Todd Samuels Clemons, Paul Peter Reggie, for State.
Jo Fleming, Donald Ray Dobbins, for Samuel Burton and Alvin McCreary.
Before CULPEPPER[*], DECUIR and GUIDRY, JJ.
WILLIAM A. CULPEPPER, Judge Pro Tem.
Defendants, Samuel Burton and Alvin McCreary, were indicted for possession of over four hundred (400) grams of cocaine, a violation of La.R.S. 40:967(C) & (F). Defendants filed a pretrial motion to suppress, which motion was denied by the trial court. Defendants sought review in this court and, on July 29, 1993, this court granted the writ finding the trial court erred in denying defendants' motion to suppress as the evidence was obtained as the result of an illegal search and seizure. The state sought relief in the supreme court. On November 19, 1993, the supreme court granted the writ and remanded the case to the court of appeal for briefing and opinion. 629 So.2d 377. The case is now before us on remand.
Defendants contend by their first assignment of error that the trial court erred in denying their Motion to Suppress when the purpose for which they were initially stopped, speeding, was concluded with the trooper's warning to 1) slow down, 2) return of defendant Burton's driver's license and 3) instructions that the defendants were "free to go".
Trooper Timothy Lafleur, employed by the Louisiana State Police, testified that on October 17, 1992, he and Trooper Savoy stopped a black Mazda RX-7 on Interstate 10 for going 62 miles an hour in a 55 mile an hour zone. Samuel Burton was driving the vehicle and Alvin McCreary was his passenger. Trooper Lafleur testified that he spoke with Burton concerning the speeding violation and while talking to him noticed that his nervousness exceeded that of a normal individual stopped for a traffic violation. In particular Burton's hands were shaking very bad, his stomach was quivering and the carotid artery in the neck was very pronounced and pulsating. Due to this extreme nervousness, Trooper Lafleur continued to question Burton concerning his recent activities. Burton informed Trooper Lafleur that he had left from Houston, Texas, had been there for two days and was there to visit relatives. Burton stated that the passenger, Alvin McCreary, was his cousin, being related somehow on his mother's father's side.
Trooper Lafleur then joined Trooper Savoy who was questioning the passenger, McCreary. McCreary informed the troopers that he had been in the Bahamas for three days and had just returned to Houston where Burton was working. He informed the officers that he and Samuel Burton were cousins, his mother and Burton's mother being sisters. Noting the conflicting stories and the actions of the two individuals, Trooper Lafleur filled out a Consent to Search Form, handed Burton back his driver's license and told him to slow down. At this point Burton began walking back to his vehicle and Trooper Lafleur asked Burton to look at the Consent to Search Form and explained to Burton what the form entailed. Burton did not sign the form and refused to allow the car to be searched, whereupon Trooper Dan Doughtary was radioed to bring a canine unit to the scene. Defendants were informed they were free to leave but the vehicle was to remain at the scene. Defendants elected to stay with the vehicle.
*345 Within approximately fifteen minutes of initially clocking the vehicle, Trooper Doughtary's canine unit arrived and gave a positive alert to the presence of drugs. A search was conducted of the vehicle, which search produced two kilos of cocaine and two nine millimeter handguns with laser sites. Defendants were thereafter placed under arrest.
There are two widely recognized exceptions to the warrant requirement involving searches of automobiles. One is known as the "automobile exception" and is based on probable cause and exigent circumstances. The "automobile exception" has been upheld in U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In Ross, the U.S. Supreme Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it, may conduct a warrantless search of the vehicle as thoroughly as a magistrate could authorize.
We find Trooper Lafleur had reasonable cause to stop defendant's vehicle upon observing the vehicle travelling 62 miles an hour in a 55 mile an hour zone. The question remains as to whether there was sufficient reasonable cause to detain the vehicle.
Unreasonable searches and seizures are prohibited by both the Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution. An illegal detention of a person is considered an unreasonable seizure. It is well settled that a seizure and search conducted without a warrant issued upon probable cause is per se unreasonable unless the warrantless seizure and search can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Tatum, 466 So.2d 29 (La.1985). La.Code Crim.P. art. 703(D) provides that the State shall bear the burden of proving the admissibility of evidence seized without a warrant.
A form of "seizure" which is permitted without the need of a warrant or probable cause is an investigatory stop made pursuant to La.Code Crim.P. art. 215.1(A). Cf. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Unlike an arrest which can be made only on probable cause, an investigatory stop may be made under the more relaxed "reasonable suspicion" standard. The right to make an investigatory stop and question the individual detained must be based upon reasonable cause or reasonable suspicion to believe that the person has been, is or is about to be engaged in criminal conduct. La.Code Crim.P. art. 215.1; and State v. Belton, 441 So.2d 1195, 1198 (La.1983). An investigatory stop is no lesser a restriction on a person's liberty of movement than an arrest, but is considered a lesser intrusion because it is briefer than an arrest. State v. Cabanas, 594 So.2d 404, 408 (La.App. 1st Cir.1991), quoting State v. Vincelli, 555 So.2d 21, 24 (La.App. 1st Cir.1989).
In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, "the whole picture," must be considered. State v. Belton, 441 So.2d at 1198, and State v. Hall, 581 So.2d 337, 338 (La.App. 3d Cir.1991).
As was noted by this court in State v. Thibodeaux, 531 So.2d 284, 285 (La.App. 3d Cir.1987), reasonable cause for a "Terry stop" is less than probable cause, but the officer must have "articulable knowledge" of particular facts, which in conjunction with reasonable inferences drawn therefrom is sufficient to provide reasonable grounds of past, present or future criminal activity. Id., citing State v. Bickham, 404 So.2d 929 (La. 1981).
A generalized suspicion or hunch that an individual is involved in criminal conduct is not sufficient to detain the individual or his automobile. A police officer must have a particularized suspicion based upon articulable facts. See State v. Thibodeaux, 531 So.2d at 282; State v. Thompson, 543 So.2d 1077, 1081 (La.App. 2d Cir.1989); and State v. Bunnell, 517 So.2d 439, 441 (La.App. 1st Cir.1987). If the police officer has a specific suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
*346 In the present case, defendants were validly stopped for driving in excess of the speed limit. Trooper Lafleur ran a check on both individuals which revealed that neither had criminal records. Afterwards, the driver was given back his driver's license, warned to slow down, and told he was free to go. It was after these events had transpired that Trooper Lafleur approached the driver with the Consent to Search form.
Defendants argue in their brief that once the purpose for the initial stop had concluded and the defendants were told they were "free to go," any action taken by the police to search the defendants' vehicle was in violation of the defendants' right to be free from unreasonable searches and seizures. Trooper LaFleur filled out the Consent to Search form before he returned defendant-Burton's driver's license and told the defendants they were free to go; he asked defendant-Burton to look at the Consent to Search form seconds later. It is obvious that the trooper had the intent to search the defendants' vehicle after he had completed the routine duties for a traffic stop. The fact that the trooper finished the steps for the traffic stop with the statement "you are free to go" should not be construed to mean that all proceedings were concluded, that the initial reasonable suspicion had been dispelled, and that before any further actions could be taken the police had to re-establish reasonable suspicion on other grounds.
In State v. Arrington, 556 So.2d 263 (La. App. 2d Cir.1990), defendant's vehicle was stopped for speeding. Defendant was nervous, sweating, and unable to produce the vehicle registration or proof of insurance. The defendant tried to block the officer's view of the interior of his automobile. A criminal history check revealed defendant had been arrested for illegally carrying a weapon and possession of marijuana. The defendant denied consent to search the vehicle. The officer removed his narcotics dog from the police automobile and the dog alerted on defendant's automobile. Again defendant denied consent to search. Defendant was arrested, the automobile towed, and a search warrant was obtained. The search turned up marijuana and cocaine. The officers also discovered the car was stolen. The trial court denied defendant's Motion to Suppress, holding that the cause, method and duration of defendant's detention was reasonable.
In State v. Cohen, 549 So.2d 884 (La.App. 2d Cir.1989), the defendant was stopped for following too close to the vehicle in front of him. The state trooper asked for the defendant's driver's license and learned that he was from Florida. The state trooper testified that defendant was disheveled in appearance and acted nervous during the issuance of warning citations. The state trooper radioed for information concerning the defendant and his vehicle. The defendant had a criminal record including a narcotics conviction. When the trooper inquired about his background, the defendant denied having a criminal record. In view of the circumstances, the trooper requested permission to search the vehicle. The defendant refused to sign a consent form. The trooper then radioed for a drug sniffing dog to conduct a search of defendant's automobile. Twenty-eight minutes later the K-9 unit arrived. The dog did not "alert," but the trooper himself detected the odor of marijuana by a partially open window. A subsequent search of the vehicle yielded one hundred and eighty pounds of marijuana. The court held the stop of defendant's automobile was lawful, the investigating detention of defendant's vehicle, one hour and fifteen minutes between defendant's refusal of consent to search and the actual search, was not for an unreasonable length of time, and the warrantless search of the vehicle was in accordance with law, therefore the trial court did not err in denying the defendant's Motion to Suppress.
In State v. Meyers, 520 So.2d 842 (La.App. 3d Cir.1987), this court held that a state trooper had probable cause to stop an automobile for speeding, and his observation of the driver's and passenger's nervousness substantiated the minimum requirements of reasonable cause necessary to initiate an investigatory stop. An investigatory stop is based on reasonable cause, a lesser standard than probable cause. When a K-9 unit arrived and gave a positive alert to the presence of narcotics, the probable cause to *347 search the car was established. It should be noted that such actions by a trained narcotics dog do not constitute a search. U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).
The key issue in the case sub judice is whether or not Trooper Lafleur reasonably suspected defendants were engaged in criminal activity based upon "reasonable suspicion." We find, after review of the pertinent case law, that the suspicion of Trooper LaFleur was sufficient to reasonably believe defendants were engaged in criminal activity, and the continued detention of the automobile after defendants were given a warning and allowed to go was justified.
By their second and third assignments of error, defendants contend that exigent circumstances did not exist in order to sufficiently justify the warrantless search, and the warrantless search was not justified by one of the narrowly drawn exceptions to the warrant requirement.
When the trial court denied defendants' motion, it stated that the two conditions for a warrantless search were met in this case. First, there must be probable cause to believe that the vehicle contained contraband or evidence of a crime. The court reasoned that probable cause for the search was provided by the conflicting stories, the nervousness of the driver, and the drug detection dog alerting positively for the presence of narcotics. Second, there must be exigent circumstances requiring an immediate search. The court based its decision on State v. Tatum, 466 So.2d 29 (La.1985), wherein the Louisiana Supreme Court held that exigent circumstances were defined as the impracticability of obtaining a warrant due to the possibility that the automobile could be moved by its occupants, if not arrested, or by someone else. Warrantless searches of automobiles are justified when the vehicle is movable, the occupants are alerted to the surveillance and the vehicle may be moved and the evidence destroyed in the interim time it would take to get a warrant. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We find the immediate warrantless search of the automobile was constitutionally permissible. The automobile was a movable, the occupants were alerted, and the automobile's contents could have been destroyed before a warrant could have been obtained.
Defendants also contend they were detained beyond the time needed to investigate a traffic violation.
Although we are dealing here with an investigative detention rather than an investigative stop, some guidance is provided in determining "reasonableness" by the U.S. Supreme Court case of U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), which stated:
"In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. See Michigan v. Summers, supra, [452 U.S. 692], at 701, n. 14, 101 S.Ct. [2587] at 2594, n. 14 [69 L.Ed.2d 340 (1981)] (quoting 3 W. LaFave, Search and Seizure § 9.2, p. 40 (1978));
State v. Cohen, 549 So.2d 884, 887 (La.App. 2d Cir.1989).
In State v. Thompson, 543 So.2d 1077 (La. App. 2 Cir.1989), the court determined that the duration of detention of the defendant, after being stopped for a traffic violation and after the officer formed reasonable suspicion that the vehicle was carrying contraband, was reasonable where delay between driver's refusal to consent to search and arrival of first drug detection dog was approximately thirty minutes, two sniff tests were conducted within ten minutes thereafter, and officers conducted a search of the vehicle within fourteen minutes after the sniff tests.
In State v. Cohen, 549 So.2d 884 (La.App. 2 Cir.1989), the court held that the detention of defendant's car for a little over one hour, while the officer diligently pursued means of investigation likely to quickly dispel or confirm his suspicions, was not an unreasonable investigative detention.
In the present case, Trooper Lafleur testified that he detained the vehicle for fourteen to fifteen minutes in order to bring in the canine unit. Defendants were told they *348 were free to leave but that the vehicle would be detained. We find that fourteen or fifteen minutes for an investigative traffic stop and canine sniff is not an excessive period of time and thus, there was not an extended restraint on the defendants' liberty.
We, therefore, hold that the trial court did not err in denying defendants' Motion to Suppress. The original stop of defendants was justified by the traffic violation and the extreme nervousness and conflicting stories of the driver and passenger gave the troopers reasonable suspicion to believe that defendants were committing, had committed, or were about to commit an offense. We further find the fourteen to fifteen minute delay from the time of the initial clocking of Samuel Burton committing the traffic offense until the time of the canine alert, was not sufficient to be construed as an undue restraint on the defendants' liberty, especially in light of the fact that the troopers advised both Burton and McCreary they were free to leave but that the vehicle would be detained. Once the canine alerted positive, exigent circumstances existed to conduct a warrantless search of the vehicle as it was a movable, the occupants had been alerted to the surveillance and the vehicle could have been moved and the evidence destroyed in the interim time it would take to get the warrant.
For the reasons assigned, defendants' writ application is denied.
GUIDRY, J., dissents.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.