644 So.2d 773 (1994)
STATE of Louisiana
v.
Michael X. ST. MARTIN, Jr., Oliver James Washington and Brian Keith Parker.
No. 93 KW 1863.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
John D. Schoonenberg, Asst. Dist. Atty., Houma, for plaintiff-applicant.
James L. Alcock, Houma, for defendant-respondent.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
SHORTESS, Judge.
Michael X. St. Martin, Jr. (defendant), and co-defendants, Oliver J. Washington and Brian K. Parker, were jointly charged by bill of information with possession of cocaine, in violation of LSA-R.S. 40:967(C). Defendant and Washington each filed a motion to suppress physical evidence. Defendant's motion was heard on July 29, 1993. On September 9, 1993, the trial court granted defendant's motion to suppress. On that same day, Washington submitted the transcript of the hearing on defendant's motion, and the trial court granted Washington's motion. On October 12, 1993, Parker pled guilty and was sentenced thereon. On December 17, 1993, we denied the State's writ application, which sought reversal of the trial court's rulings on the motions to suppress. On March 10, 1994, Washington pled guilty as charged to the instant offense and was sentenced for the crime.[1] Thereafter, on March 25, 1994, under docket number 94-KK-0170, the Louisiana *774 Supreme Court granted the State's writ application for review of this court's denial of the State's writ application to this court. In granting the application, the supreme court remanded the case to this court for briefing, opinion and argument. See State v. St. Martin, 94-KK-0170 (La. 3/25/94), 635 So.2d 229. For reasons stated hereinafter, we recall the previous denial of the State's application, grant the application, reverse the trial court's ruling granting defendant's motion to suppress, deny defendant's motion to suppress, and remand this matter to the trial court for further proceedings consistent with this opinion.
While on patrol in his police unit on Louisiana Highway 24 in Terrebonne Parish at about noon on May 2, 1993, Louisiana State Police Officer Frederick Thomas, Jr.[2] observed a 1985 gray Honda occupied by three individuals approaching from the opposite direction without a motor vehicle inspection sticker. Thomas, who was alone in his unit, looked in his rearview mirror, noticed the Honda had a Louisiana license plate, realized the vehicle was being driven without the required inspection sticker, turned his unit around, and stopped the Honda.
After being stopped, Washington (the driver) got out of the Honda. Thomas asked Washington for his driver's license. Washington stated he did not have it on his person. Thomas requested a computer check and learned Washington did not have a license. Thomas read Washington his constitutional rights and arrested him because he was an unlicensed driver. Through a check of outstanding warrants, Thomas learned no warrants were outstanding, but Washington was a convicted felon. While explaining to Washington that he was under arrest, Thomas indicated to him that he would have to impound the car and that a vehicular search of the car would have to be made. Thomas told Washington he needed to know if there were any weapons or drug contraband in the car. Washington indicated to Thomas that, although there were no weapons in the car, there were drugs and drug paraphernalia inside the car and that defendant (one of the car's occupants) was the owner of the car.
Thomas radioed State Police Troop C for a backup police unit. About 30 minutes later, Trooper Blanchard arrived at the scene of the stop. Thomas then went back to the Honda and asked Parker (a passenger in the car) to exit. A computer check of Parker revealed he too was a convicted felon. Thomas read Parker his constitutional rights before questioning him. When questioned, Parker stated there were no weapons in the Honda but there were drugs in the car. More specifically, Parker explained there was cocaine and a crack pipe in the car. Parker further stated that he, Washington, and defendant had been riding in the car all night and that they had purchased the drugs from a black male "off of East Street." Thomas then moved Parker to the rear of his unit and proceeded to require defendant (the other passenger) to get out of the Honda.
Thomas then requested a computer check of defendant. It indicated defendant was a convicted felon. At that point, Thomas advised defendant of his constitutional rights before questioning him and informed defendant of the statements Washington and Parker had made to him. Thomas asked defendant if he would consent to a "vehicular search" of the Honda.[3] When Thomas asked defendant if he would consent to the search, defendant was very nervous and asked Thomas what he thought he should do, "whether he should go and get the drugs out [sic] the car or not...." Defendant also said there were drugs in the car, but he further indicated he was apprehensive about retrieving them from the car. On several occasions, defendant "attempted to move to get the drugs but eventually he changed his mind." Defendant told Thomas he had been drinking. Thomas had detected a strong odor of alcohol on defendant's breath, leading Thomas to conclude defendant was intoxicated. Defendant, who had his driver's license with him, asked Thomas if he could drive away in *775 the car; however, Thomas told him he could not because he had been drinking.
Thomas moved defendant to the rear of the Honda and advised defendant that he was "going to do a vehicular search, an inventory search rather," because he had to impound the car. Thomas began the search at the trunk of the car. He moved to the driver's side of the car and then to the passenger side. Parker had told Thomas that the drugs were on the floorboard of the front seat on the passenger side where defendant had been seated and that defendant had placed the drugs there prior to the traffic stop. When Thomas moved to the passenger side of the car, he found a crack pipe and substances that appeared to be crack cocaine in plain view on the floorboard. Thomas seized the contraband and placed it in a plastic container. He showed the evidence to defendant and placed defendant under arrest. All three subjects were taken to the parish jail and booked.
At the hearing on the motion to suppress, defense counsel's only arguments in support of the motion were as follows. First, the car (which was searched without defendant's consent) could have been towed to an impoundment area, and a search warrant could have been obtained if there was probable cause to search the vehicle. Second, and more particularly, defense counsel argued that the officer stated he was going to make an inventory search and that the search was illegal since it did not comport with the legal requirements for a valid inventory search. Now on appeal, defendant essentially only restates his arguments that the search was not a valid inventory search but rather a warrantless search without consent or probable cause carried out under the pretext of an inventory search.
Although the trial court stated in its reasons for granting defendant's motion to suppress that it believed Thomas had probable cause to search the Honda, it concluded the proper procedure would have been to obtain a search warrant based upon the officer's probable cause to search the vehicle. The court further noted that, although there was a question of whether a search warrant was necessary because of exigent circumstances, Thomas had testified that the search was in connection with an inventory of the vehicle. In regard to an inventory search, the court indicated that the jurisprudence does not permit an inventory search to be made as a subterfuge for a warrantless search to secure incriminating evidence. In further reasons, the court stated there were no apparent exigent circumstances justifying the warrantless search, and in attempting to conduct what Thomas called an inventory search, Thomas violated defendant's Fourth Amendment rights to be secure against unlawful searches and seizures.
The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution prohibit unreasonable searches and seizure. A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tatum, 466 So.2d 29, 31 (La.1985). One of these is the "automobile" exception, which is based upon the existence of probable cause to search the vehicle and exigent circumstances which render it impractical to secure a warrant. State v. Gamboa, 543 So.2d 1129, 1131 (La.App. 1st Cir.), writ denied, 550 So.2d 646 (La.1989).
The present standard for warrantless "automobile" searches under the Fourth Amendment was expressed in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In Ross, the United States Supreme Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed within it may search the vehicle. That search may be as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched. 456 U.S. at 825, 102 S.Ct. at 2173. "The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." 456 U.S. at 824, 102 S.Ct. at 2172.
*776 For constitutional purposes, there is no difference between seizing and holding a car before presenting the probable cause issue to a magistrate and carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. State v. Tatum, 466 So.2d at 31.
In evaluating alleged violations of the Fourth Amendment, the United States Supreme Court has undertaken an objective assessment of an officer's action in light of the facts and circumstances then known to him. State v. Garcia, 519 So.2d 788, 793 (La.App. 1st Cir.1987), writ denied sub nom, State v. Rodriguez, 530 So.2d 85 (La.1988) (citing Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Scott v. United States, 436 U.S. at 138, 98 S.Ct. at 1723.
Here, it is clear Thomas legitimately stopped the Honda for a violation of state traffic laws which prohibit a person from driving a vehicle, on a state highway, without an inspection tag showing the vehicle to have been inspected and approved as required by LSA-R.S. 32:1301, et seq. See LSA-R.S. 32:53(D) and 57. Viewing the circumstances objectively, Thomas' actions were justified. Following the stop, from the moment Washington told Thomas there were drugs and drug paraphernalia inside the Honda, there was without question probable cause to justify a search of the car under the automobile exception. Thereafter, the other statements given by Parker and defendant that there were drugs in the car served to corroborate and, thus, augment the already existing probable cause to search.[4] Because the stop was legitimate and the warrantless search was lawful under the automobile exception, the trial court erred in granting defendant's motion to suppress. Consequently, we now grant the State's writ application, reverse the trial court's granting of the motion to suppress, deny the motion to suppress, and remand this matter to the trial court for further proceedings consistent with this opinion.
DENIAL OF STATE'S WRIT APPLICATION RECALLED, APPLICATION GRANTED, GRANT OF MOTION TO SUPPRESS REVERSED, MOTION TO SUPPRESS DENIED, AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] At the arraignment proceeding at which Washington pled guilty, his counsel noted the outcome of the State's writ application was moot in light of Washington's guilty plea.
[2] Thomas's testimony was the only evidence presented at the hearing.
[3] Thomas had already verified by computer check that the Honda belonged to defendant, which was consistent with Washington's statement that defendant owned the car.
[4] Because there was probable cause to search the vehicle pursuant to the automobile exception to the warrant requirement, we need not and do not address any issue as to whether the search was a valid inventory search.