|2LeBLANC, Judge.
Valentine Kalie (defendant) was charged with the felony offense of possession with intent to distribute marijuana, in violation of La. R.S. 40:966(A). Defendant filed a motion to suppress the drug evidence, but the trial court denied his motion after a hearing. Defendant then pled guilty, preserving his appeal rights. The trial court accepted his plea and imposed a twenty-year prison sentence. On appeal, defendant’s sole assignment of error is that the police conducted an unreasonable search of the rental car and therefore, the trial court erred in denying his motion to suppress the illegally-obtained evidence.
BACKGROUND
Determining the constitutionality of searches and seizures is necessarily fact intensive. The transcript of the motion to suppress hearing and a videotape of the traffic stop which was entered into evidence reflects the following factual sequence. On *273 the night of January 9,1995, at approximately 11:13 p.m., Raymond Brashier, a Baton Rouge city police officer with the Narcotics Division, Highway Interdiction Unit, was operating radar in the eastbound lanes of Interstate 12 (1-12) at Airline Highway. A black Toyota Camry passed him, occupying the center and left lanes, and then drifted into the right lane. With Brashier following, it pulled back into the center lane and then drifted into the right lane again. At that time, Brashier stopped the vehicle at the Sherwood Forest Boulevard exit. The driver, Shelby Bailey, got out of the car and approached Brashier, who asked for her driver’s license. He also asked if she had been drinking alcohol. She handed her license to Brashier and replied “no.” She explained she had driven to Houston, Texas, from Birmingham, Alabama, and was returning to Birmingham. To Brashier, she appeared nervous and was shaking and refused to make eye contact. He asked who owned the car. She replied a'friend from Birmingham had rented it for her use. She explained she had been to Houston to visit sick relatives.
Learning the driver was not the ear’s owner, Brashier approached defendant, a passenger who was still seated in the ear, and asked defendant for lathe car’s rental agreement. Neither suspect appeared as an additional driver on this agreement and Brashier noticed the agreement was signed in Birmingham the previous day. Brashier testified defendant, like the car’s driver, appeared nervous and his hand was shaking violently. Defendant said a Birmingham co-worker rented the ear for them, they were coming from Houston returning to Birmingham, and they had driven to Houston to visit friends.
After questioning defendant, Brashier returned to his cruiser. Brashier then again approached Bailey and asked defendant to join them behind the rental car. He announced he would not issue a driving citation, and added the driver should take a rest break. Brashier then warned the occupants that rental companies did not approve of unlisted individuals driving their rental cars, and because defendant indicated he did not have his driver’s license, Bailey should continue driving. Brashier then stated they were free to leave. The video tape shows the suspects turned and began to walk away when Brashier asked defendant for permission to “look through the ear” before they left. Defendant declined permission saying: “I don’t know why you .stopped [us].” He asked why Brashier would want to search the car and said there was no need for him to do so. Defendant eventually declared he did not have authority to give consent.
Brashier then announced he would detain the ear but defendant and Bailey were free to leave on foot. Additional officers arrived with a narcotics dog and defendant and Bailey watched as the dog circled the car. The dog alerted aggressively under the car’s trunk.
Brashier then believed probable cause existed to search the car’s trunk. He approached defendant and Bailey, announced their Miranda rights, and asked if they understood those rights. Both eventually said they did. At this time, the other officers[2] were opening the car’s trunk and were searching defendant’s black duffel bag. They soon discovered several packages of a green leafy substance. 14Pefendant said the substance was marijuana, about forty pounds’ worth. Brashier thereafter arrested both defendant and Bailey.
At the motion to suppress hearing, defendant argued that after the initial questioning, Brashier lacked reasonable suspicion to further restrict his freedom pending a drug dog sniff test. This restriction was unreasonable since he was not practically “free to leave,” being a non-resident stranded on the side of 1-12. He argued Brashier subjectively intended, at all times, to, investigate for illegal drugs rather than improper driving. He supports his theory with the following observations: 1) neither the driver’s nor his behavior prompted Brashier to administer a field sobriety test, nor did he issue a traffic ticket for improper lane usage; 2) both the driver’s and his responses to why they visited *274 Houston were reasonably similar though not identical; and 3) their nervous behavior alone cannot justify a continuing restraint on personal liberty. In short, defendant claims Brashier lacked the requisite reasonable suspicion of criminal activity when he called for the narcotics dog, so the detention of the car and, consequently, his person, was unreasonable, making the warrantless search per se unreasonable.
The State counters that Brashier’s suspicions were reasonable because defendant was nervous, was shaking almost “violently,” and was avoiding eye contact. His suspicions were also based on discrepancies in the suspects’ travel details and the car rental agreement so he could justifiably extend his initial investigation. The State reminds us a narcotics dog sniff test is not considered a “search” by federal or state constitutional standards.[3]
The trial court agreed with the State and denied defendant’s motion to suppress the drug evidence. It based its decision on the automobile exception to the warrant rule. Concerning reasonable expectations of privacy, the court acknowledged the jurisprudence distinguishes between a vehicle, having a lower expectation of privacy, and a house, which is deemed sacrosanct. It reasoned further that if the initial stop is justified and the occupant’s behavior arouses an | sofficer’s suspicions, police may detain a vehicle awaiting the arrival of a narcotics dog though the occupants were not under arrest.
Neither side disputes Brashier had probable cause for the initial traffic stop and for the subsequent search after the narcotics dog arrived and alerted. The issue is whether: 1) Brashier’s articulated suspicions and inferences made from his observations were reasonable and sufficiently specific to justify an extended investigatory restriction of defendant’s freedom before the narcotics dog arrived; and 2) whether the length of this restriction was reasonable.
ANALYSIS OF LAW AND FACT
All persons have a constitutional right to be free from unreasonable governmental searches and seizures. U.S. Const, amends. IV and XIV; La. Const, art. 1, § 5. A traffic stop is a type of seizure. Warrant-less searches and seizures are per se unreasonable unless a court-created exception applies. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), involved one of these exceptions. In Terry, the United States Supreme Court held a police officer need have only reasonable suspicion to perform a brief investigatory stop. The Terry court opined such a procedure may be justified though lacking probable cause if the officer acts quickly to dispel or confirm his suspicions. Terry, 392 U.S. at 28-31, 88 S.Ct. at 1883-1885. La.C.Cr. P. art. 215.1A authorizes an investigatory stop if based on reasonable suspicion. It reads:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
The United States Supreme Court in United States v. Sharpe, 470 U.S. 675, 686,105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), announced that if a police officer has a specific suspicion of criminal activity he may further detain an individual while he diligently pursues a means of investigation likely to confirm or dispel the particular suspicion. This court in State v. Bunnell, 517 So.2d 439, 441 (La.App. 1st Cir.1987), held a generalized suspicion or hunch that an individual is involved in criminal conduct is not sufficient to detain an individual or his automobile. If an |6officer violates a person’s constitutional rights after the initial traffic stop investigation ends and searches a car anyway, any evidence obtained and used against that person must be excluded. See Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).
The state argues that because an automobile is inherently mobile, Officer Brashier’s stop and subsequent search without obtaining a warrant is constitutional based on the “automobile exception” See State v. St. Martin, 93-1863, p. 6 (La.App. 1st Cir. 10/7/94) 644 So.2d 773, 776. The State also argues *275 Brashier’s suspicion was not a mere hunch but was reasonable and sufficiently specific because it was based upon the suspects’ extreme nervousness, their inconsistent responses and because the car “had been rented in Birmingham on January 8 by a person other than defendant or the driver”.[4]
Defendant’s brief does not address the latter two grounds but implies his response (“visiting friends”) was sufficiently similar to the driver’s response (“visiting sick relatives”) to negate Brashier’s opinion it was suspicious. He also contends riding in a car, rented in Birmingham on the previous day by another person, is not bizarre or illegal. The above two articulated grounds do not support reasonable inferences of criminal activity, defendant implies, and consequently, their alleged extreme nervousness was the only ground for Brashier’s decision to detain the car. Defendant maintains nervousness alone cannot provide reasonable suspicion, citing State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
We agree that when individuals are confronted with police presence, nervousness alone does not support reasonable suspicion that would justify a |7detention longer than necessary to investigate the initial traffic stop. However, extreme nervousness is highly suspicious and may be considered with other facts and circumstances in the reasonable suspicion inquiry. State v. Belton, 441 So.2d at 1198. Brashier’s “street” experience may also be considered in assessing whether he made reasonable inferences from the present facts. State v. Meyers, 520 So.2d 842, 845 (La.App. 3d Cir.1987).
Other courts have been faced with this issue before with differing results. This court in Bunnell reversed the trial court’s denial of a motion to suppress marijuana and cash evidence. Similar to the case before us, a police officer in Bunnell validly stopped a car for speeding on 1-12. The officer questioned the driver, noting she was “visibly nervous.” The driver indicated she had visited friends in Houston and was en route to Florida. Bunnell was a passenger. He said he had visited Dallas, although the officer did not ask if he had also visited Houston. The car was registered to Bunnell in New York, but both he and the driver had Florida driver’s licenses. Both suspects said they had moved to New York after receiving their licenses.
The officer declined to issue a speeding citation because he was “suspicious,” not of their involvement in any particular crime, but only generally suspicious. He said his suspicions were based on the suspects’ nervousness, their inconsistent answers as to which city they had visited (Houston or Dallas), and the fact each suspect had a Florida driver’s license but drove a car registered to Bunnell in New York.
Based on those facts, we held the drug evidence obtained after defendant consented to a car search should have been excluded, partially because “[t]here were no facts known to [the officer] that would have indicated to a man of average reason that Bun-nell was engaged in illegal activity.” State v. Bunnell, 517 So.2d at 441. A generalized suspicion or hunch, we held, was insufficient to excuse a further restraint on a person’s liberty.
|8In contrast, the court in State v. Thompson, 543 So.2d 1077 (La.App. 2d Cir.), unit denied, 551 So.2d 1335 (1989), affirmed the trial court’s denial of the motion to suppress marijuana evidence. In Thompson, 543 So.2d at 1079, the officer stopped Thompson’s truck because it was weaving in and out of the traffic lanes. The officer noticed Thompson was breathing rapidly, his hands were shaking as he tried to retrieve his *276 driver’s license, and he appeared “overly” or “extremely” nervous. The officer also smelled the scent of a deodorizing agent originating from the truck’s cargo bed, which was loaded with taped cardboard boxes. The officer testified he had learned through years of experience that these smells are sometimes used to mask marijuana’s natural smell. Usually, an innocent driver will use air freshener in the occupied area rather than the cargo bed, the officer explained. Thompson also allegedly tried to keep the officer away from his truck by placing himself between the truck and the officer.
After analyzing all the facts, the Thompson court reasoned the combination of Thompson’s behavior and the smell of the “air freshener” provided reasonable suspicion the truck contained contraband. It contrasted the Bunnell suspicions of some unspecified type of illegal activity to the suspicions of the Thompson officer and found the officer had a specific and articulable suspicion Thompson’s truck contained marijuana or other illegal drugs. Thompson, 543 So.2d at 1081.
State v. Arrington, 556 So.2d 263 (La.App. 2d Cir.1990), found the arresting officer had reasonable suspicion to request a narcotics dog. The officer stopped Arrington for speeding. Arrington appeared nervous and was unable to produce the car’s registration or insurance papers. He tried to block the officer’s view of the car’s interior. A check on Arrington’s record revealed he had a criminal record for carrying an illegal weapon and for possession of marijuana. Since the defendant refused to consent to a search, the officer requested a narcotics dog who alerted to the presence of drugs in the car.
Similarly, in State v. Cohen, 549 So.2d 884 (La.App. 2d Cir.1989), writ denied, 559 So.2d 135 (1990), the court affirmed the trial court’s denial of a | amotion to suppress marijuana evidence. The officer stopped Cohen for following too close to the ear ahead. Cohen was from Florida, and he appeared nervous during questioning. He also lied to the officer about his criminal record, which included a narcotics conviction. He refused consent to a search. The officer nevertheless detained Cohen until the arrival of a narcotics dog. The dog arrived; it did not alert, but the officer smelled marijuana emanating from a partially opened window. Based on those facts, the court agreed the officer had reasonable suspicion to request the dog and later had probable cause to search, based on the marijuana smell.
In State v. Burton, 93-828 (La.App. 3rd Cir. 2/23/94) 640 So.2d 342, writ denied, 94-0617 (La.4/7/94), 641 So.2d 203, the Third Circuit affirmed the trial court’s denial of a motion to suppress cocaine evidence. Burton involved an officer who stopped a speeding car on Interstate 10. Burton, the defendant, appeared exceptionally nervous for a traffic stop situation.[5] He said he came from Houston, Texas, where he visited relatives for two days. He also said the passenger was his cousin. The passenger said he had been in the Bahamas for three days and just returned to Houston where Burton was working. The passenger also acknowledged he and Burton were cousins but explained the blood relationship in a way that conflicted with Burton’s explanation. The officer filled out a consent to search form after noting the conflicting stories but returned Burton’s driver’s license and said, “Slow down.” Burton and the passenger turned toward then-car when the officer asked if Burton would sign the consent to search form, which the officer had handed to Burton with his driver’s license. Burton refused to sign, causing the officer to request a canine unit by radio. The officer then announced the suspects were “free to leave” but he was detaining their car. Both suspects stayed at the scene.
| xpBurton argued, after the officer announced they were free to leave, the purpose of the initial stop ended and the officer no longer had a reasonable suspicion they were committing, were about to commit, or had committed a crime. However, the Third Circuit disagreed and said:
The fact that the trooper finished the steps for the traffic stop with the statement ‘you *277 are free to go’ should not be construed to mean that all proceedings were concluded, that the initial reasonable suspicion had been dispelled, and that before any further actions could be taken the police had to reestablish reasonable suspicion on other grounds.
Burton, 93-828 at p. 5, 640 So.2d at 346. Thus, it seems the Burton court found reasonable suspicion of criminal activity existed on the basis of three facts: 1) Burton’s nervousness was extreme; 2) both suspects related conflicting accounts of their genealogy; and 3) both suspects responded with conflicting and vague accounts about their travel plans of the days before the stop. The court went on the emphasize the trooper had the intent to search the defendant’s vehicle after he had completed the routine duties of a traffic stop, as evidenced by the already completed consent to search form. The facts were held to be enough to justify detaining defendant’s car and, ipso facto, their persons before the narcotics dog alerted to drugs in their car.
In the instant case, we find the facts more analogous to State v. Bunnell, 517 So.2d at 440-41. Defendant and Bailey appeared nervous and gave slightly varying, although not conflicting, responses about their travel plans. These factors alone did not justify further detention of the vehicle. Brashier articulated no other reasons for the detention than nervousness and the statements. These alone do not indicate “to a man of average reason that [defendant] was engaged in illegal activity.” Bunnell, 517 So.2d at 441.
Upon completion of the routine duties of the traffic stop, Braisher instructed defendant and Bailey they were free to leave, and instructed that Bailey was to drive, because defendant did not have his driver’s license. Any detention after this point was for the express and sole purpose of obtaining a consent to search the vehicle. Brashier did not satisfied the “reasonable suspicion” standard that the person has been, is, or is about to be engaged in criminal conduct. Belton, In441 So.2d at 1198. There was no scent of a deodorizing agent. See Thompson, 543 So.2d at 1081. The driver was able to produce the car’s registration and did not attempt to block the officer’s view of the vehicle. See Arrington, 556 So.2d at 264. Brashier had no information which implied untruthfulness as to the criminal record of either occupant. See Cohen, 549 So.2d at 885-86. The slightly varying narration of the facts surrounding their trip did not rise to the level of inconsistency found in Burton, 93-828 at p. 2, 640 So.2d at 344.
Reviewing the “totality of the circumstances”,[6] we find Brashier’s articulated suspicions of nervousness and varying statements were not sufficiently specific and particularized to support reasonable cause to believe that defendant has been, is, or is about to be engaged in criminal conduct. The facts known to Brashier would not indicate defendant was engaged in criminal activity. The motion to suppress the evidence seized from the automobile should have been granted.
CONCLUSION
Therefore, we find merit to defendant’s assignment of error. Defendant’s conviction and sentence are reversed. The case is remanded to the trial court to allow defendant an opportunity to withdraw his guilty plea and for further proceedings.
CONVICTION AND SENTENCE REVERSED; REMANDED.
SHORTESS, J., dissents with reasons.

. Two other officers were present at the scene: one with the narcotics dog and the other conducting the search.

. See United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983).

. However, Brashier did not articulate this as a factor in his reasoning. In his testimony, Brashier stated "Due to the nervous conditions and the contradicting statements, I wanted to ask for consent to search this vehicle” and "Because of their nervous activity. Mr. Kalie’s hand, as he was handing me the rental agreement, shaking violently. He did not keep good eye contact with me. It appeared to me that he was extremely nervous." The affidavit of probable cause completed by Brashier the day after the stop states "The defendant and a co-defendant, Shelby Bailey were stopped for Improper Lane Usage after the rental car crossed the lines several times. [I] contacted both defendants and detected excessive nervousness. They gave conflicting statements and neither person was listed on the rental agreement.”

. The officer alleged that the driver's "hands were shaking very bad, his stomach was quivering and the carotid artery in the neck was very pronounced and pulsating.” Burton, 93-828, at p. 2, 640 So.2d at 344.

. See Belton, 441 So.2d at 1198, citing United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981).