699 So.2d 879 (1997)
STATE of Louisiana
v.
Valentine KALIE.
No. 96-K-2650.
Supreme Court of Louisiana.
September 19, 1997.
*880 Richard P. Ieyoub, Atty. Gen., Douglas P. Moreau, District Atty., John A. Cannon, Baton Rouge, for Applicant.
Edward R. Greenlee, Baton Rouge, for Respondent.
PER CURIAM:[*]
In a case in which "[n]either side disputes [that officer] Brashier had probable cause for the initial traffic stop and for the subsequent search after the narcotics dog arrived and alerted," State v. Kalie, 95-2051, p. 5, (La.App. 1st Cir. 10/2/96), 682 So.2d 271, 274 (emphasis in original) (Shortess, J., dissenting), the First Circuit overturned the trial court's denial of the defendant's motion to suppress on grounds that Officer Brashier "articulated no other reasons for the detention" than nervousness and the slightly varying statements made by the defendant and his companion, circumstances which "alone do not indicate `to a man of average reason that [defendant] was engaged in illegal activity.' " Id., 95-2051, p. 10, 682 So.2d at 277 (quoting State v. Bunnell, 517 So.2d 439, 441 (La.App. 1st Cir.1987)). We granted the state's application for review because the First Circuit's decision apparently conflicts with the settled rule that the determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes but turns on a completely objective evaluation of all of circumstances known to the officer at the time of his challenged action. Whren v. United States, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); State v. Wilkens, 364 So.2d 934, 937 (La.1978). We now reverse.
No dispute exists regarding the circumstances of the search in this case. On the night of Monday, January 9, 1995, Brashier, a narcotics officer assigned to the Highway Interdiction Unit, pulled over a rented Toyota Camry after observing the vehicle weave back and forth between lanes several times on I-12 outside Baton Rouge. According to the officer's testimony at the motion to suppress, when the driver, Shelby Bailey, emerged from the car, she appeared extremely nervous and avoided eye contact with him. Bailey told the officer that she was on her way back to Birmingham, where she lived, and that she had been in Houston on the previous Saturday, visiting sick relatives.
Officer Brashier then spoke with the defendant, the passenger, who gave him an alias and also appeared extremely nervous. The defendant's hands shook violently as he handed Brashier the rental form which indicated that the Camry had been rented to a third person in Birmingham on Sunday, January 8, 1995. The defendant told Brashier that he and Bailey had been in Houston visiting friends for a few days and that they were returning to Birmingham.
Brashier did not write a traffic citation for improper lane use but cautioned Bailey that rental companies frowned on unlisted drivers and told them that they were free to leave. As the defendant and Bailey walked back to the Camry, and as officer Cowart arrived on the scene with a drug detection dog in response to Brashier's call for backup, Brashier suddenly asked the defendant if he would *881 consent to the search of the Camry. Informed by the officer that he need not give his consent, the defendant refused permission for the search. Brashier again told the defendant and Bailey that they were free to leave but that he would detain the car for a sniff test conducted by Cowart's dog. Cowart got the dog out of his patrol unit and it alerted on the trunk of the Camry. Inside, the officers found approximately 45 pounds of marijuana.
That Officer Brashier was conducting a drug interdiction patrol when he pulled over the Camry had no bearing on the legality of the initial stop for improper lane use. Whren, ___ U.S. at ___, 116 S.Ct. at 1774 ("the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'") (quoting Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978)). On the other hand, when Brashier informed the defendant and Bailey that they were free to leave but that he would detain their vehicle for further investigation, the officer had exceeded the scope of a routine traffic stop. Cf. Ohio v. Robinette, ___ U.S. ___, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). The officer therefore needed articulable facts giving rise to a reasonable suspicion of some separate illegal activity that would justify further detention of the Camry. United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In making that determination, "the totality of the circumstancesthe whole picturemust be taken into account." United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Based on that whole picture, "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity...." Id. The circumstances "must be judged by an objective standard: would the facts available to the officer at the moment of seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" State v. Flowers, 441 So.2d 707, 712 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984).
We need not decide here whether the circumstances articulated by Officer Brashier at the hearing on the motion to suppress alone would have justified the continued detention of the Camry. The officer's testimony made clear that he knew one additional fact before he informed Bailey and the defendant that he would detain the vehicle: the Camry had been rented on Sunday for the trip to Houston. Brashier therefore knew that both the defendant and Bailey had lied about their presence in Houston on Saturday or "a few days" earlier. Taking into account the entire picture, including the extreme nervousness of the defendant and Bailey and their inability to give a consistent account of their travels corresponding to the date of the rental agreement, any reasonable person, and especially any reasonable police officer, would have a particularized and objective basis for suspecting the ulterior motives of a round trip taking less than two days from Birmingham to Houston, in a car rented by a third person, ostensibly to visit a sick relative and/or "friends."
The officer therefore had an objective and articulable (if not fully articulated) basis for seizing the car to maintain the status quo for the few moments it took Cowart's dog to sniff the vehicle, a means of investigation "likely to confirm or dispel [the officer's] suspicions quickly...." United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). The dog's sniff test of the vehicle's exterior surfaces did not itself constitute a search, Place, 462 U.S. at 707, 103 S.Ct. at 2644-45, and at the moment the dog alerted on the trunk, the officers had probable cause to search the car. Exigent circumstances arising from the detention of the vehicle on the open road excused the lack of a warrant. Pennsylvania v. Labron, ___ U.S. ___, ___, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) ("Our first cases establishing the automobile exception to the Fourth Amendment's warrant requirement were based on the automobile's `ready mobility,' an exigency sufficient to excuse failure to obtain a search warrant once *882 probable cause to conduct the search is clear.")
The decision of the First Circuit is therefore vacated, the judgment of the district court denying the motion to suppress is reinstated, and this case is remanded for further proceedings.
REVERSED; JUDGMENT OF THE DISTRICT COURT REINSTATED; CASE REMANDED.
NOTES
[*] Johnson, J., not on panel. See Rule IV, Part 2, § 3.