817 So.2d 186 (2002)
STATE of Louisiana
v.
Steven ROMSKY.
No. 01-KA-1067.
Court of Appeal of Louisiana, Fifth Circuit.
April 10, 2002.
*187 Harry J. Morel, District Attorney, Howat A. Peters, Jr., Assistant District Attorney, Hahnville, LA, for Appellee.
C. Gary Wainwright, New Orleans, LA, for Appellant.
Panel composed of Judges THOMAS F. DALEY, JAMES L. CANNELLA and MARION F. EDWARDS.
EDWARDS, Judge.
Defendant Steven Romsky appeals the denial of his Motion to Suppress Evidence. For the foregoing reasons, we affirm, but remand for the limited purpose discussed infra.
The St. Charles Parish District Attorney filed a bill of information charging the defendant, Steven Romsky, along with a co-defendant, Charles Neuman, with possession of more than 60 pounds of marijuana, a violation of LSA-R.S. 40:966(E)(1).[1] Romsky pled guilty to possession with intent to distribute marijuana, reserving his right to appeal the denial of his Motion to Suppress pursuant to State v. Crosby,[2] and pursuant to LSA-C.Cr.P. art. 893. The trial judge sentenced Romsky to three years of imprisonment at hard labor and a $5,000.00 fine. The trial judge suspended the sentence and placed Romsky on active probation for three years. Romsky *188 filed a written motion for appeal, which the trial judge granted.[3]
The facts of the case are developed from the hearing on the Motion to Suppress. On August 8, 1998, at approximately 4:20 a.m., Officer Chester Kawalski and another officer of the St. Charles Parish Sheriff's Office were patrolling Interstate 10 in St. Charles Parish, near the intersection with Interstate 310. Officer Kawalski testified that he observed a Nissan Maxima pass his vehicle and signal to return to the right lane. Shortly thereafter, Officer Kawalski saw the Maxima approach a vehicle in front of it, and then abruptly swerve into the left lane to avoid hitting the car. The Maxima then signaled to return to the right lane. Officer Kawalski noted that the driver appeared to be watching the police car in his rear view mirror, rather than paying attention to the vehicle in front of him.
Because the Maxima failed to signal when it had moved into the left lane, Officer Kawalski activated his emergency lights, which Officer Kawalski explained simultaneously activates the video recorder in the police unit. The Maxima pulled over, and Officer Kawalski approached the vehicle, that was driven by the defendant, Neuman. Officer Kawalski noticed that the car had a temporary Louisiana license tag. When the car stopped, Steven Romsky sat up in the backseat, as if he had been asleep. Officer Kawalski asked Neuman to exit the vehicle, and advised him of the traffic violation. The officer asked Neuman where he and Romsky had been, and Neuman replied they had been to the casino in Lake Charles. Because Neuman seemed to be extremely nervous, Officer Kawalski decided to speak to the passenger. As Officer Kawalski approached the car, Neuman stated, "Oh yeah, we've been to Padres [sic] Island for the weekend."
When Officer Kawalski asked Romsky where they'd been, Romsky said they were returning from South Padre Island. However, Romsky said they had not made any stops except to eat. Officer Kawalski returned to Neuman and told him that Romsky did not remember stopping at the casino. Neuman explained that Romsky had been sleeping at the time. Officer Kawalski stated that Neuman identified Romsky as "Mike", and that he did not know Romsky's last name. Officer Kawalski requested permission from Neuman to search the vehicle, which permission was refused. Based on the circumstances, specifically the conflicting accounts and the "extreme nervousness" of Romsky and Neuman, Officer Kawalski suspected that the two were trafficking in narcotics. He then requested a canine unit and advised both men that they could leave, but that the vehicle "would be secured" until the unit arrived.
Officer Kawalski asked Neuman whether he had any prior arrests, to which Neuman replied that he had been arrested when he was 18 because he was in a "drug area." A computer check subsequently revealed that Neuman had several prior arrests, including robbery.
Once the canine officer and dog arrived, the canine alerted on the trunk. At that point, Officer Kawalski decided there was probable cause to search the car, and opened the trunk where he found marijuana.
Neuman testified that he did not recall driving erratically before being stopped by *189 Officer Kawalski. He explained that Romsky's middle name is Mike, and that people called Steven Romsky, "Mike." According to Neuman, the reason he did not tell Officer Kawalski Romsky's last name was because Romsky "always gets in trouble" and he was worried that Romsky might have an outstanding attachment for a bar fight. Neuman testified that they waited for approximately one hour and fifteen minutes from the time they were stopped until the canine unit arrived. Additionally, Neuman denied that he was nervous and stated the dog did not make any noise or other signal at the car. He acknowledged that Officer Kawalski stated they could leave, but contended that leaving was unrealistic considering they were on the elevated part of the interstate.
Neuman acknowledged that he had been convicted of three counts of first degree robbery and theft when he was seventeen, approximately nine years before this incident. He also said that after this incident, he was convicted for possessing marijuana after being stopped at a border checkpoint. After holding the matter open for memoranda, the trial court subsequently denied the Motion to Suppress.

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, AND THREE
Romsky advances essentially the same argument urged by his co-defendant, Charles Neuman, contending that the trial court improperly denied his Motion to Suppress because the discovery of the marijuana was the fruit of an illegal stop and an illegal detention. First, Romsky contends that the stop was illegal because "there is a significant question whether or not Mr. Newman (sic) committed a traffic violation in the first place." Next, Romsky argues that the lengthy detention until the canine unit arrived exceeded the scope of a valid investigatory stop. The State responds that the trial judge properly denied the defendant's motion because both the stop and the subsequent detention did not violate the defendant's constitutional rights.
Romsky contends that the trial court improperly denied his Motion to Suppress because the discovery of the marijuana was the fruit of an illegal stop and an illegal detention. Specifically, he urges that the traffic stop was unlawful because it was pretextual. Next, Romsky contends that the lengthy detention until the canine unit arrived exceeded the scope of a valid investigatory stop. The State responds that the trial judge properly denied the defendant's motion because neither the stop nor the subsequent detention violated Romsky's constitutional rights.
If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.[4]
Romsky asserts that the traffic stop was pretextual because the events could not have occurred as related by Officer Kawalski. However, the United States Supreme Court has recognized that, as a general rule, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.[5] The standard is purely objective, and does not take into *190 account the subjective beliefs or expectations of the detaining officer.[6]
LSA-R.S. 32:79 provides for proper lane use on Louisiana highways. In this case, Officer Kawalski stated that he stopped the Neuman's car after observing him commit a traffic violation. "In Louisiana, ... a car which partially leaves its lane of travel and crosses the fog line either at the center of a divided highway or on the right hand shoulder of the road therefore provides the police with probable cause to believe that a traffic violation for improper lane use has occurred." Thus, Officer Kawalski had probable cause to believe that a traffic violation for improper lane use occurred after he observed Neuman's vehicle following so closely behind another vehicle that Neuman had to suddenly swerve into the left lane without using his turn signal.
Next, Romsky contends that Officer Kawalski's testimony should not have been believed by the trial court because the police unit's video recorder failed to capture the events that occurred before the stop. However, Officer Kawalski, an officer with twelve years of experience, explained that the recorder does not stay on constantly. The recorder can be manually activated, and he stated that it automatically begins to record when the emergency lights are activated. Officer Kawalski testified that, in this case, the recorder did not capture the traffic violation because the device was activated after the traffic violation occurred, when he activated the emergency lights. Although Neuman testified that he was not driving erratically that night, the trial court apparently found the testimony of Officer Kawalski to be more credible. This Court has stated that the "[c]redibility of witnesses is best determined by the trial judge and is not to be upset on appeal unless the trial judge abuses his or her discretion."[7] Nothing in the record indicates that the judge abused his discretion in crediting the testimony of Officer Kawalski over Neuman's testimony. There is no merit in this contention.
Romsky further contends that the length of the detention constituted an unconstitutional seizure of his person. As explained above, the defendant's vehicle was stopped for a valid traffic violation. The Louisiana Supreme Court has recognized that the scope of a routine traffic stop was exceeded when an officer told the occupants of an automobile that they were free to leave, but that the vehicle would be detained for further investigation.[8] At that point, the officer "needed articulable facts giving rise to a reasonable suspicion of some separate illegal activity that would justify further detention of the defendant's vehicle."[9] Accordingly, when Officer Kawalski informed Neuman and Romsky that they were free to leave, but that he would detain the vehicle for further investigation, the officer had exceeded the scope of a routine traffic stop and needed reasonable suspicion to justify the subsequent detention.
Reasonable suspicion to support an investigatory stop is something less than probable cause and is determined *191 under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference.[10] Evidence derived from an unreasonable investigatory stop will be excluded from trial.[11]
The Louisiana Supreme Court has rejected a similar argument to the one advanced by Romsky.[12] There, it was held that the length of the defendant's detention, 53 minutes from the initial, routine traffic stop until the canine alerted on the defendant's trunk, did not convert the lawful investigatory stop into a de facto arrest. The court reasoned that the defendant's nervous behavior and "unlikely explanation" for an overnight trip in a car, which the officer discovered had been rented by a person who had a prior arrest for a possession of a substantial amount of marijuana, led to "a shift in the trooper's focus that was neither unusual nor impermissible."[13] The officer radioed for the first available canine unit, and the canine officer arrived on the scene 34 minutes later. The court stated that, although the length of the stop was nearly an hour at that point, its duration was reasonably correlated with the escalating level of suspicion as the officers pursued a means of investigation likely to confirm or dispel the trooper's suspicions without unnecessary delay.[14]
The United States Supreme Court has recognized that an investigatory stop that continues indefinitely will at some point no longer be justified as an investigatory stop.[15] In determining whether a detention is too lengthy to be considered as an investigatory stop, it is appropriate to examine whether or not the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.[16] The court cautioned a reviewing court making this assessment to "take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not engage in unrealistic second-guessing."[17]
In the present case, we find that the subsequent detention in the present case was justified by reasonable suspicion due to Neuman's nervous behavior and the conflicting statements of Neuman and Romsky. Officer Kawalski testified that Neuman was extremely nervous, would not make eye contact, that his breathing "quickened," and that the artery in the defendant's neck was "jumping." Neuman's account of his and Romsky's whereabouts varied in that he initially stated that they had been to Lake Charles at the casino, but then, as Officer Kawalski approached the vehicle where Romsky was sitting, said they were coming from South Padre Island, Texas. Romsky and Neuman supplied conflicting accounts of their itinerary, with Romsky stating they had *192 not stopped anywhere else except to eat. He made no mention of the casino. Under these circumstances, a continued detention was justified.
We next address whether Officer Kawalski diligently pursued a means of investigation that was likely to confirm or dispel her suspicions quickly. The evidence at the hearing reflects that one hour passed between the time defendant was pulled over at 4:28 a.m. and was arrested at 5:29 a.m. Just five minutes elapsed between the stop and when Officer Kawalski requested a canine unit, which arrived at 5:27 a.m. Neuman was arrested within minutes of the canine unit's arrival. It is significant that the physical intrusiveness of the stop did not intensify as the scope of the stop expanded, in that Neuman was not handcuffed and placed in the police unit.[18] Neuman and Romsky sat on the curb unrestrained, and Officer Kawalski even offered to have a police unit transport the two of them to a pay phone. The dog's sniffing of the vehicle's exterior surfaces did not itself constitute a search, and exigent circumstances arising from the detention of the vehicle on the open road excused the lack of a warrant.[19]
Under these circumstances, the record fully supports the denial of the Motion to Suppress and we affirm, finding no error therein.
The record was examined for errors patent.[20] In so doing, we note that the record reflects the trial court failed to completely advise defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8, in that the judge failed to indicate when the relevant period began to run. Accordingly, we remand the case to the district court and order it to inform Romsky of the provisions of LSC.Cr.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this Court's opinion, and to file written proof that Romsky received the notice in the record.[21]
AFFIRMED; REMANDED.
NOTES
[1] See companion case State v. Steven Romsky, 01-KA-1067 (5th Cir. 4/10/02) 817 So.2d 186.
[2] 338 So.2d 584 (La.1976).
[3] We note that the motion for appeal was filed beyond the five day time limit accorded by LSA C.Cr.P. article 914. However, the appeal is considered to be timely because the plea was entered pursuant to State v. Crosby, supra. See, State v. Weiland, 556 So.2d 175, 175 (La.App. 5 Cir.1990).
[4] State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989 citing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Tucker, 626 So.2d 707 (La. 1993).
[5] Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996).
[6] Also see Arkansas v. Sullivan, 532 U.S. 769, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994 (2001); State v. Waters, 00-356 (La.3/12/01), 780 So.2d 1053, 1056; State v. Richards, 97-1182 (La.App. 5 Cir. 4/15/98), 713 So.2d 514, 517, writ denied, 98-1452 (La.10/09/98), 726 So.2d 27.
[7] State v. Snavely, 99-1223 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 957, writ denied, 00-1439 (La.02/16/01), 785 So.2d 840 (citation omitted).
[8] State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881.
[9] Id.
[10] State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
[11] State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989.; State v. Jones, 01-177 (La.App. 5 Cir. 10/17/01, 800 So.2d 958).
[12] State v. Miller, 00-1657 (La.10/26/01), 798 So.2d 947, 951.
[13] Id. at 950.
[14] Id. See also State v. Lopez, 00-562 (La.11/3/00), 772 So.2d 90, 93.
[15] United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).
[16] United States v. Sharpe, 105 S.Ct. at 1575; also see State v. Kalie, supra.
[17] United States v. Sharpe, 105 S.Ct. at 1575.
[18] See Miller, supra, 798 So.2d at 950.
[19] See State v. Lopez, supra, 772 So.2d at 90; State v. Kalie, supra, 699 So.2d at 881
[20] State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[21] See State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276, 1281.