# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 07-119

**STATE OF LOUISIANA**

**VERSUS**

**RAPHAEL VALLOT, ET AL.**

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 105961-D
HONORABLE WILLIAM D. HUNTER, DISTRICT JUDGE

**********

**SYLVIA R. COOKS
JUDGE**

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Billy Howard Ezell,
Judges.

Ezell, J., dissents and assigns written reasons.

**AFFIRMED.**

**Robert Clauson Vines
Assistant District Attorney
300 Iberia Street,  #200
New Iberia, LA 70560
(318) 369-4420
Counsel for Plaintiff/Appellant:
State of Louisiana**

**Daniel James Stanford**
**Attorney at Law**
**117 Caillouet Place**
**Lafayette, LA 70501**
**(337) 232-2272**
**Counsel for Defendants/Appellees:**
**Kenneth Washington**
**Jessica Frilot Washington**

**John Kevin Stockstill**
**Attorney at Law**
**117 Caillouet Place**
**Lafayette, La 70501**
**(337) 262-0203**
**Counsel for Defendants/Appellees:**
**Raphael Vallot**
**Dexter Vallot**
**RV & Son Trucking, Inc.**

**Pedros Ramos**
**In Proper Person**
**168 Alamo Lane**
**Church Point, LA 70525**

**J. Kevin Watson**
**Watson & Jones, P.A.**
**P. O. Box 23546**
**Jackson, MS 39225**
**(601) 939-8900**
**Counsel for Defendant/Appellee:**
**Equilease, LLC**

**COOKS, JUDGE.**

The State of Louisiana appeals a trial court judgment which rendered an *in personam* judgment against only one of four defendants. In addition to Dexter Vallot, the State argues that it proved by more than a preponderance of the evidence that Kenneth Washington, Raphael Vallot, and RV and Son Trucking, Inc. were involved in a drug conspiracy. It asks this court to enter judgment finding these three defendants also share the burden of the civil forfeiture judgment along with Dexter Vallot. For the following reasons, we affirm the judgment of the trial court.

### FACTS

RV and Son Trucking, Inc. transports partially refined and/or refined sugar from mills throughout Iberia Parish to the Port of Iberia. Raphael Vallot is the president of RV and Son Trucking. His son, Dexter Vallot, is the vice president.

In June 2003, Dexter became acquainted with Kenneth Washington. Kenneth leased a 2000 Red Peterbuilt tractor to RV and Son Trucking. Equilease, LLC is the owner of the tractor who in turn leased it to Kenneth. Kenneth introduced Dexter to Pedro Ramos. Pedro and Kenneth had met while attending dog fights. Pedro and his brothers were cocaine traffickers.

The testimony revealed that Dexter transported cocaine for Pedro on two occasions. In order to do so, Dexter made modifications to the Peterbuilt tractor leased from Kenneth by constructing sheet metal to conceal the compartment under the sleeper bed where the cocaine was carried. The first time he transported cocaine to Florida. On the second occasion, which is at issue in this case, Dexter attempted to transport eighty-five kilograms of cocaine from the Mexico-Texas border to Louisiana. On February 10, 2004, Dexter was driving the 2000 Peterbuilt tractor which was searched at the Sarita Border Patrol Checkpoint, which is located north of Brownsville, Texas. At this time, the eighty-five kilograms of cocaine were

discovered hidden in the cab of the rig.

On August 26, 2005, the State of Louisiana instituted forfeiture proceedings pursuant to La.R.S. 40:2601, *et seq.* On October 4, 2005, the State filed a petition seeking an *in personam* judgment of forfeiture against Pedro Ramos, Raphael Vallot, Dexter Vallot, Kenneth Washington, and RV and Son Trucking. The petition sought a judgment in the amount $2,420,000.00 which represents the value of the Peterbuilt tractor and the eighty-five kilograms of cocaine seized.

A hearing on the *in personam* matter was held on October 13, 2006.[1] The trial court found that the State met its burden of proof regarding Dexter and rendered judgment against him for $2,420,000.00. The trial court held that the State failed to meet its burden of proof regarding Raphael, Kenneth, and RV and Son Trucking. The State appeals the judgment.

### *IN PERSONAM* FORFEITURE JUDGMENT

"Civil forfeiture is the process by which governments seize property without compensating its owner, based on its connection with the commission of crime. There is no prerequisite that a crime be proved before property is subject to confiscation." *State v. Edwards*, 00-1246, p. 11 (La. 6/1/01), 787 So.2d 981, 990 (citation omitted). The majority of proceedings that have been before the courts are *in rem* proceedings. However, the present action was filed pursuant to La.R.S. 40:2613 which provides that a forfeiture may be ordered by court on an *in personam* civil action when there has been conduct giving rise to forfeiture. *See also State v. Clark*, 94-598 (La.App. 3 Cir. 2/21/96), 670 So.2d 493, *writ denied*, 96-1331 (La. 2/7/97), 688 So.2d 495. Louisiana Revised Statute 40:2614 provides that assets can be substituted when the property subject to forfeiture is not available. The State

---

[1]It appears from the record that the claim against Pedro was not at issue at this hearing.

sought an *in personam* judgment because the Peterbuilt tractor was leased and exempt from forfeiture since it was owned by an innocent entity. The money involved in the transactions was also beyond the jurisdiction of the court.

> Under the original enactment of the Forfeiture Act, the state had the initial burden of showing the existence of probable cause for the forfeiture of property. In 1997, the burden of proof for forfeiture was amended by Acts 1997, No. 1334 § 1, which changed the state's burden of proof from "probable cause" to "preponderance of the evidence." LSA-R.S. 40:2612(G).

*State v. $107,156 U.S. Currency Seized from Marlin Morton and Richard Woods*, 41,090, pp. 13-14 (La.App. 2 Cir. 6/30/06), 935 So.2d 827, 835, *writ denied*, 06-2271 (La. 11/22/06), 942 So.2d 557. "Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows the fact sought to be proved is more probable than not." *Hanks v. Entergy Corp.*, 06-477, p. 19 (La. 12/18/06), 944 So.2d 564, 578.

The ultimate determination of whether there was a preponderance of the evidence for forfeiture is a legal question. *State v. $29,177.00 U.S. Currency*, 93-592 (La.App. 3 Cir. 2/2/94), 638 So.2d 653, *writ denied*, 94-1955 (La. 10/28/94), 644 So.2d 378. However, the findings of fact which lead to a preponderance of the evidence determination are subject to the manifestly erroneous/clearly wrong standard of review. *Id*.

In evaluating the testimony and evidence, the trial court specifically found that Pedro was lying. The trial court found that Raphael and RV and Son Trucking were only involved in the drug scheme by implication and not by proof adduced at trial. While the court stated that it believed Kenneth was involved in the conspiracy, it found that the evidence at trial fell short of proving such.

Kenneth Washington

Kenneth did introduce Pedro and Dexter. Kenneth is also the person who leased the 2000 Peterbuilt tractor to RV and Son Trucking. However, Dexter testified he used the tractor for the trip across the border without Kenneth's consent. Dexter explained that this particular tractor was the only one with an apportioned plate. Dexter testified, after he was stopped in Sarita, Kenneth had a conversation with Pedro. During this conversation, Kenneth allegedly told Pedro Dexter was "green" and should not have been transporting the drugs.

Don DeSalvo, a special agent with the Drug Enforcement Agency (DEA) testified Dexter told him Kenneth was concerned that Pedro was grooming Dexter to transport drugs. Dexter further indicated Pedro and Kenneth were feuding and Pedro did not want to supply any more drugs to Kenneth. Douglas Langley, a task force agent with the DEA, confirmed Dexter related Kenneth knew nothing about the truck going to Texas and was upset when he learned about it.

Seward Broussard, who was employed at RV and Son Trucking, testified Kenneth conducted business on occasion with RV and Son Trucking. Although he saw Kenneth with a bag of cash, he did not know where the cash came from. Seward never heard Kenneth discuss drugs and had no knowledge that Kenneth knew Dexter had made modifications to the tractor.

Based on this evidence and testimony, we agree with the trial court the State failed to establish by a preponderance of the evidence that Kenneth Washington had knowledge or participated in the transport of cocaine on February 10, 2004. The judgment as to Kenneth Washington is affirmed.

<u>Raphael Vallot</u>

The evidence as to Raphael is even weaker than it was for Kenneth. The only testimony which even hints that Raphael may have known something about the cocaine transportation is Broussard's testimony. Broussard testified he heard Raphael comment a couple of times that he was involved in some things he did not want to do. Broussard further testified he had no knowledge that Raphael was involved in the transaction.

The trial court was also correct in finding the facts did not support, by a preponderance of the evidence, that Raphael Vallot was involved or had knowledge concerning the transportation of cocaine on February 10, 2004. The judgment is also affirmed as to Raphael Vallot.

<u>RV and Son Trucking, Inc.</u>

The law does provide, in certain instances, a corporation can be found responsible for the acts of its employees. However, certain prerequisites must be met before so finding. "The general rule is that if a specific criminal intent is necessary to constitute a crime, an employer may be penalized for an employee's criminal act, only if the agent acted within the scope of his employment, and *not if the agent acted for some purpose other than that of serving his employer*." *U.S. v. Ridglea State Bank*, 357 F.2d 495 (C.A Tex 1966), *quoting Restatement (Second), Agency* § 217D, comment d, and § 235 (1958). As the federal court said in *Standard Oil Co. of Tex. v. United States*, 307 F.2d 120, 129 (5th Cir. 1962):

> Under a statute requiring that there be a "specific wrongful intent," . . . the corporation does not acquire that knowledge or posses the requisite "state of mind essential for responsibility," through the activities of unfaithful servants whose conduct was undertaken to advance the interests of parties other than their corporate employer.

Dexter Vallot testified specifically that RV and Son Trucking would not profit from

the sale of cocaine, and that it was Dexter who would receive the money for transporting the cocaine. There is no indication that the corporation was benefitted in any way from Dexter's illegal scheme. Simply because he used his connection with RV and Son Trucking as vice president, to utilize the corporation and its assets to facilitate the transportation of the cocaine" does not *ipso facto* require a finding that RV and Son Trucking had knowledge of and participated in the scheme to transport cocaine. The courts have consistently maintained that acts of employees are imputed to the corporation only when the employee's conduct was "(1) in the course of his employment and (2) for the benefit of the corporation." *First Federal Savings Bank of Hegewisch v. United States*, 52 Fed.Cl. 774, 792 (2002), *quoting Official Comm. Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 359 (3d Cir. 2001). Therefore, we affirm the trial court's judgment as to RV and Son Trucking.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant, the State of Louisiana.

**AFFIRMED.**

-6-

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-119

STATE OF LOUISIANA

VERSUS

RAPHAEL VALLOT, ET AL.

EZELL, J., dissenting.

I disagree with the majority in finding that RV and Son Trucking should not also be held as a responsible party for the civil forfeiture judgment. I find that there is a preponderance of evidence that RV and Son Trucking had knowledge and participated in a scheme to transport cocaine. As vice-president of the corporation, Dexter was able to use corporate assets to further his interest, which in turn is a financial advantage to his own company.

Tort law has found companies liable for the wrongful actions of a corporate officer when the employment is shown to be employment-rooted, but not necessarily exclusively so, and it should be reasonably incidental to the performance of his official duties. *Miller v. Keating*, 349 So.2d 265 (La.1977). "The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment." *Ermert v. Hartford Ins. Co.*, 559 So.2d 467, 477 (La.1990).

> The problem of determining the scope of executive employment often arises in intentional tort cases, in which the court must determine if the executive's intentional wrongful act is attributable to the employer. While there is no black letter rule on when liability should attach in such situations, this court and others have generally imposed responsibility upon the business enterprise where the conduct in

question was at least partially motivated by an intent to serve the interests of the business.

*Id*.

As noted by the supreme court in *Ermert*, an assault and attempted murder of the corporation's former vice-president by the corporate president in *Miller* was in large part, although perhaps not exclusively, motivated by the president's desire to improve the company's financial position, so the conduct was found to be within the scope of his employment.

In a forfeiture case in Pennsylvania, the court held that the knowledge of a corporate president's use of a corporate motor vehicle to transport cocaine is properly imputed to the corporation since he had direct control over the vehicle and he himself represented the corporation in executing the vehicle registration and application for title. *Court of Common Pleas of Pennsylvania, Montgomery County, Commonwealth v. One 1978 Porsche Coupe*, 23 Pa. D & C.3d 268 (1981).

The Peterbuilt truck used to transport the drugs was leased by RV and Son Trucking a few months before the transportation of the cocaine began. It had an RV and Son Trucking insignia on it. Dexter, as vice-president of the corporation, altered the truck to facilitate the transport of cocaine. He did so on corporate property during business hours. An employee testified that he was present when the sleeper compartment was altered and that he helped. He was told that it was going to be used to pick up some "dope."

Dexter testified that RV and Son Trucking did not invest any money to purchase the cocaine and that it was not going to profit from the sale of the cocaine. The testimony indicates that it was Dexter who was going to receive the money for transporting the cocaine and that there may have also been a need to repay a debt to Pedro Ramos. However, Dexter's connection with RV and Son Trucking as vice president allowed him the opportunity to utilize the corporation and its assets to

facilitate the transportation of the cocaine and receive a transportation fee which benefitted him as vice president of the corporation.

The specific truck used was leased from Kenneth Washington, the man who introduced Dexter to Pedro, by Raphael Vallot. This specific truck had to be used to transport the cocaine because it had a special license plate that it allowed to travel out of state. None of the other trucks had the apportioned plate.

Clearly, RV and Son Trucking was involved with the scheme to transport the cocaine. The business was used to lease a particular truck. This could have only been arranged by an officer of the corporation. Furthermore, the vice president of the company actually used the employee and facilities of the company to further the endeavor. The vice president of the company was the person driving the leased company truck when it was stopped. The company should be held responsible.