798 So.2d 947 (2001)
STATE of Louisiana
v.
Charmaine D. MILLER a/k/a Desiree M. Charmaine.
No. 2000-K-1657.
Supreme Court of Louisiana.
October 26, 2001.
*948 Richard P. Ieyoub, Attorney General, Walter P. Reed, District Attorney, Dorothy A. Pendergast, Metairie, Counsel for Applicant.
Bernard J. Bagert, Jr., New Orleans, Counsel for Respondent.
PER CURIAM.[*]
On the morning of August 30, 1998, a routine traffic stop made by a state trooper in St. Tammany Parish after he observed the rental car driven by respondent cross over the right-hand fog line of the highway, and routine questioning occasioned by the trooper's check of respondent's license and registration, rapidly unfolded into a broader inquiry. Prompted by respondent's extreme nervousness, reflected in her "shaking almost uncontrollably," her admission that she was driving back to Atlanta from Houston through the night, taking several caffeine tablets to stay awake because she "just wanted to drive," although her employer had purchased a round-trip plane ticket to fly between the two cities on a business trip, and *949 the discovery that the second name on the rental agreement, listed as the principal driver, belonged to someone described by respondent as her "cousin," who had been arrested for possession of 50 to 2,000 pounds of marijuana, the trooper asked respondent for permission to search her vehicle. After respondent refused consent, the officer radioed for the first available narcotics detection dog. Officer Gary Thigpen of the Mandeville Police Department arrived approximately half an hour after the call, and his dog alerted on the trunk of respondent's vehicle. The officers opened the trunk and discovered a duffle bag containing a large package of marijuana.
In all, some 53 minutes had elapsed from the initial traffic stop to the discovery of the marijuana. For the majority on the court of appeal panel reviewing the trial court's denial of respondent's motion to suppress the evidence, the duration of the stop "exceeded what could be justified as a reasonable investigatory detention." State v. Miller, 99-1735, p. 6 (La.App. 1st Cir.5/12/00) (unpub'd). Because the police did not have probable cause to arrest respondent at the time they entered the trunk of the vehicle, the court of appeal remanded the case to the district court with instructions to grant the motion to suppress and vacate respondent's guilty plea to possession of marijuana with intent to distribute entered under State v. Crosby, 338 So.2d 584 (La.1976), to preserve the suppression issue for review. Dissenting from that order, Judge Weimer argued that "[w]hen applying common sense and ordinary human experience to the facts known to the trooper, the investigatory detention was reasonable." Miller, 99-1735 at 2 (Weimer, J., dissenting). We granted the state's application to reverse the majority on the court of appeal panel because we agree with Judge Weimer that the length of respondent's detention did not convert an otherwise lawful investigatory stop based on reasonable suspicion into a de facto arrest not supported by probable cause.
Given the fact-intensive nature of the inquiry into whether a detention constitutes an investigatory stop, by its nature a brief encounter between the police and a citizen based on reasonable suspicion of criminal activity, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), or an arrest, an extended restraint on liberty which requires a greater showing of probable cause, "courts have been unable to develop a bright-line test to determine when police-citizen encounters exceed the bounds of mere Terry stops." United States v. Ienco, 182 F.3d 517, 524-25 (7th Cir.1999). Because "[t]here is no scientifically precise formula that enables courts to distinguish between valid investigatory stops ... and other detentions that the law deems sufficiently coercive to require probable cause," United States v. Zapata, 18 F.3d 971, 975 (1st Cir.1994), a court inquiring into the nature of a forcible detention must examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) (citations omitted). A court making this assessment "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." Id.
In the present case, the state trooper acted lawfully in stopping respondent after observing her cross the righthand fog line of the highway. See State v. Waters, 00-0356, pp. 5-6 (La.3/12/01), 780 So.2d 1053, 1056-57. Given the lawfulness *950 of the initial stop, the reasonableness of the escalating encounter between respondent and the state trooper hinged on "whether the actions undertaken by the officer following the stop were reasonably responsive to the circumstances justifying the stop in the first place, as augmented by information gleaned by the officer during the stop." United States v. Sowers, 136 F.3d 24, 27 (1st Cir.), cert. denied, 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998). The trooper testified at the suppression hearing that he stopped respondent for reasons of public safety without intending to issue her a citation. Nevertheless, the officer had the right to conduct a routine license and registration check and to engage respondent in conversation as he did so. State v. Lopez, 00-0562, p. 3 (La.10/30/00), 772 So.2d 90, 92-93.
Respondent's nervous demeanor as she responded to the officer's questions and her unlikely explanation for the overnight trip in a car rented by an individual who had been arrested for possession of a substantial amount of marijuana led to a shift in the trooper's focus that was "neither unusual nor impermissible." Sowers, 136 F.3d at 27. The trooper immediately reported his deepening suspicions and Officer Thigpen, at home when he received his dispatcher's call, responded promptly, arriving with his dog on the scene 34 minutes later. The stop was approaching an hour at this point but its duration reasonably correlated with the escalating level of suspicion as the officers pursued a means of investigation likely to confirm or dispel the trooper's suspicions without unnecessary delay. See United States v. Owens, 167 F.3d 739, 749 (1st Cir.1999) (50-minute investigatory stop reasonable: "[a] long duration ... does not by itself transform an otherwise valid stop into an arrest."); United States v. McCarthy, 77 F.3d 522, 530 (1st Cir.1996)(75-minute investigatory stop reasonable: "there is no talismanic time beyond which any stop initially justified on the basis of Terry becomes an unreasonable seizure under the Fourth Amendment.") (internal quotation marks and citation omitted); cf. United States v. Place, 462 U.S. 696, 709-10, 103 S.Ct. 2637, 2645-46, 77 L.Ed.2d 110 (1983) ("In assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation.... [A]lthough we decline to adopt any outside time limitation for a permissible Terry stop, we have never approved a seizure of the person for the prolonged 90-minute period involved here....") (citation and footnote omitted).
We also take into account here that physical intrusiveness of respondent's detention did not intensify as the duration of the stop expanded to accommodate the trooper's growing suspicions of criminal activity. The trooper refrained from handcuffing respondent and placing her in the back seat of his patrol unit, circumstances which might have suggested during the lengthening delay that a de facto arrest had taken place. See Ienco, 182 F.3d at 525 ("Additionally, and perhaps most compelling in the context of this case, is the fact that the officers held Ienco ... in a locked police car for approximately half an hour.... The duration of the detention is not necessarily dispositive [but] an unduly intrusive stop is prohibited."); cf. United States v. Gil, 204 F.3d 1347, 1351 (11th Cir.2000)("[T]o maintain the safety of the officers and the ongoing investigation of the residence, handcuffing Ms. Gil and detaining her in the back of the police car was reasonable."), cert. denied, 531 U.S. 951, 121 S.Ct. 357, 148 L.Ed.2d 287 (2000). The trooper allowed respondent to stand at the rear of the rental car until Officer Thigpen arrived with his narcotics dog and found her "leaning up against the bumper of her vehicle."
*951 Under these circumstances, the record fully supports the finding of the trial court that the officers diligently pursued their investigation and that the duration of the stop, although not brief, did not transform the encounter into a de facto arrest. Accordingly, the decision of the court of appeal is reversed, the judgement of the district court denying respondent's motion to suppress the evidence and her statements on the scene is reinstated, respondent's guilty plea and sentence are also reinstated, and this case is remanded to the district court for execution of sentence.
JUDGMENT OF COURT OF APPEAL REVERSED; CASE REMANDED.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as justice pro tempore, participating in the decision.