WILLIAMS, J.
_JjThe claimant, Richard Woods, appeals the trial court’s judgment in favor of the state, ordering the forfeiture of $107,156 under the Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989 (“Forfeiture Act”). For the reasons that follow, we affirm the trial court’s denial of the motion to dismiss the forfeiture action; however, we reverse the trial court’s judgment ordering forfeiture of the currency.
FACTS
On March 3, 2004, Richard Woods was a guest passenger in a 1999 Ford Crown Victoria operated by Marlin Morton. During a routine patrol of Interstate 20 in Ouachita Parish, Louisiana State Trooper Jason Jordan noticed the vehicle and observed that its temporary license plate was handwritten and illegible. Trooper Jordan stopped the vehicle for the traffic violation.
According to Trooper Jordan’s testimony, Morton and Woods appeared nervous and avoided eye contact. The trooper requested their names and identification and returned to his patrol unit to request another unit to assist him and to perform criminal background checks. The background checks revealed that both men had prior felony convictions.
After issuing a warning citation for the traffic violation, Trooper Jordan asked whether illegal items or contraband were present in the vehicle and requested permission to search the vehicle. Woods and Morton refused to consent to a search, so Trooper Jordan requested a K-9 unit to conduct a dog sniff of the vehicle. Upon its arrival at the scene, the K-9 unit gave positive alerts on the driver-side front door and the back passenger-side | ?door. Woods and Morton were then asked whether “anything of value” was present in the vehicle. Woods informed the officers that his computer equipment was in the vehicle. The vehicle was then searched, and the officers observed a black duffel bag on the back passenger side floorboard. A search of the bag revealed four plastic “Ziploe” bags containing a large sum of cash. According to the officers, $104,456 was found in the duffel bag, and an additional $2,700 was on Woods’ person.[1] No controlled dangerous substances were discovered.
Woods and Morton were asked to accompany the officers to Troop F headquarters to determine the origin of the currency. Once they arrived at the headquarters, Morton informed the officers that he was unaware of the presence of the currency in the vehicle and signed a disclaimer to that effect. Woods took full responsibility for the currency, explaining that he had the money to pay for the production of four music compact discs (“CDs”). He informed the officers that he and Morton were in route to Dallas, Texas to meet with the music producer who would be producing the CDs. Woods also stated that he produced music under his company, RSG Entertainment, LLC, and the currency found in the vehicle was from the cash sales of music CDs he had produced through his company.
On June 1, 2004, the state of Louisiana filed a petition for in rem forfeiture of $107,156 of U.S. currency, pursuant to the Forfeiture Act, LSA-R.S. 40:2601, et seq. On June 4, 2004, Woods accepted service *830 of ^process by the long-arm statute through his attorney. He later filed an answer, asserting that he is the exclusive owner of the currency and that the currency was acquired through his legitimate business. Woods later filed a motion to set the forfeiture action for trial on the merits, which was dismissed. On August 13, 2004, he filed a motion to set the matter for trial, and the motion was denied. Instead, the matter was set for a status conference on November 17, 2004.
On September 15, 2004, Woods filed a motion to dismiss the action for failure to prosecute within the 60-day delay provided by LSA-R.S. 40:2612(G). In the alternative, Woods requested an evidentiary hearing to enable him to assert his due process rights. The trial court denied both the motion to dismiss and the request for an evidentiary hearing. Woods filed an application for supervisory writs, which this Court granted and remanded the matter for an evidentiary hearing. State of Louisiana v. $107,156 U.S. Currency, 39,-502 (La.App. 2d Cir.10/28/04)(unpublished). On remand, the trial court denied the motion to dismiss the in rem action. Subsequently, Woods filed another application for supervisory writs, which this Court denied. State of Louisiana v. $107,156 U.S. Currency, 39,865 (La.App. 2d Cir.2/17/05)(unpublished).
Following a trial on the merits, the trial court concluded that the state trooper had probable cause to stop and detain Woods, and the state had produced sufficient evidence to show that the currency was properly forfeited. The trial court stated:
... I find that the state ... has proven its case that the money was properly forfeited. [A]s to the credibility, I— [that’s4 maybe for a higher court to determine. I’m satisfied that this money ... was not ... packed in cellophane paper. I’ve never seen business people do business with money wrapped in cellophane paper. They have ... usually letters of credit. They have ... certified checks, the amounts are determined in advance. [T]his is a bag with ... cellophane paper wrapped in five thousand denominations or one thousand denominations. It is just not a proper way to do business, Mr. Woods.
Thus, the trial court rendered judgment in favor of the state, forfeiting the $107,156 in currency to the state.[2] This appeal followed.
DISCUSSION

The Stop and Detention

Woods assigns as error the trial court’s conclusion that the state trooper had probable cause to stop and detain him. According to Woods, the stop and his prolonged detention violated his rights under the Fourth Amendment of the United States Constitution, which protects individuals “against unreasonable searches and seizures.”
The authority and limits of the Fourth Amendment apply to investigative stops of vehicles. United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The legality of a traffic stop is analyzed under the framework articulated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). State v. Sims, *831 40,300 (La.App. 2d Cir.10/26/05), 914 So.2d 594. For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. United States v. Sharpe, supra; State v. Sims, supra.
First, we find no merit in Woods’ argument that the initial stop constituted a violation of his Fourth Amendment rights. During the trial, Trooper Jordan testified that the vehicle in which Woods was a passenger initially aroused his suspicion because it had “push bumpers” and numerous antennas, similar to those on law enforcement vehicles. When Trooper Jordan proceeded behind the vehicle, he noticed a “piece of paper hanging in the rear window like some kind of tag, identification.” He stated that the numbers on the paper were handwritten and illegible from his vantage point. He also testified that he had never seen such a temporary tag in his ten years as a state trooper. Consequently, he decided to initiate a stop of the vehicle.
A traffic violation is a valid basis for an investigatory stop. State v. Waters, 2000-0356 (La.3/12/01), 780 So.2d 1053. LSA-R.S. 47:521 governs the display of a temporary license plate. It reads:
Each temporary registration license plate shall at all times be in a clearly visible place and position. It shall be fastened to the rear of the vehicle or in the rear window of the vehicle to which it has been assigned. The temporary registration license plate shall be maintained in a condition that is clearly legible and free from foreign materials.
In this case, the stop of the vehicle was based upon Trooper Jordan’s initial observation that the temporary license plate was handwritten and | ^legible. At that point, he had no knowledge that the temporary tag was from another state. Trooper Jordan testified that the tag, if issued in Louisiana, was invalid because temporary license plates issued in Louisiana are computer generated, rather than handwritten. Although a closer investigation of the temporary document revealed that it, in fact, was legible, Woods introduced no evidence that Trooper Jordan did not have reasonable suspicion that a traffic violation had occurred at the inception of the stop. The evidence in the record indicates that the trooper had reasonable suspicion that a traffic violation had occurred. Thus, we conclude that the trial court did not err in ruling that Woods’ Fourth Amendment rights were not violated by the initial stop of the vehicle.
Having concluded that the stop was valid, we must now determine whether Woods’ constitutional rights were violated by his further detention. In State v. Miller, 2000-1657 (La.10/26/01), 798 So.2d 947, the defendant was stopped for a traffic violation and was detained for approximately one hour awaiting the arrival of a K-9 unit. The Court held that the officers were justified in detaining the defendant. The court found that the officers did not have probable cause to arrest the defendant for an offense during the detention. However, her answers to the officers’ questions gave them reasonable suspicion of criminal activity, and the duration of the wait for the K-9 unit “reasonably correlated with the escalating level of suspicion as the officers pursued a means of investigation likely to confirm or dispel the trooper’s suspicions without unnecessary delay.” Id., 798 So.2d at 950.
In this case, we conclude the officers were justified in detaining |7Morton and Woods to await the arrival of the K-9 unit. Trooper Jordan testified that he ap *832 proached the vehicle to obtain Morton’s driver’s license and the vehicle’s registration documents to ensure that the temporary registration tag was valid. Although probable cause to arrest the two men did not exist, their nervousness, avoidance of eye contact and indirect answers to questions aroused the officer’s suspicion of criminal activity. Trooper Jordan stated that, rather than answering questions, Woods immediately began to question why the vehicle was stopped, and his carotid artery was beating at a faster pace as the discussion progressed. Additionally, Morton initially denied having any pri- or criminal offenses, but he later admitted to having a cocaine charge. A criminal background investigation revealed that both Morton and Woods had past criminal histories, with Woods having a prior firearms conviction.
Morton and Woods’ nervousness and criminal histories, as well as their indirect answers to Trooper Jordan’s questions, gave the officer reason to believe that he should investigate further. He called for a K-9 unit, and the dog gave positive alerts on the vehicle. A canine search is not a “search” within the meaning of the Fourth Amendment. United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396; State v. Paggett, 28,843 (La.App. 2d Cir.12/11/96), 684 So.2d 1072. Once the dog “alerted” on the door panels, the officers had probable cause to search the vehicle without first obtaining a warrant. See, Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Thus, we find the trial court did not err in upholding the validity of the detention of Woods and Morton, as well as the subsequent search of the vehicle.

Motion to Dismiss

Woods also assigns as error the trial court’s denial of his motion to dismiss the in rem action on the basis that the matter was not tried within 60 days of service of process as mandated by LSA-R.S. 40:2612(G), which provides, in pertinent part:
The issue shall be determined by the court alone, and the hearing on the claim shall be held within sixty days after service of the petition unless continued for good cause....
It is undisputed that the hearing on the claim was not held within 60 days after service of the petition. As noted above, Woods accepted service of the petition on June 4, 2004. Thus, the hearing on the claim should have been heard prior to August 4, 2004, “unless continued for good cause.” The matter was not brought to trial until April 18, 2005. There is no evidence in the record that either party moved for a continuance or that “good cause” existed to justify the delay.
In State v. Nourallah, 98-1651 (La.7/2/98), 721 So.2d 900, after the trial court ordered that the claimants’ property be returned based on the state’s failure to request a hearing within the 60-day time limit set forth in LSA-R.S. 40:2612(G), the court of appeal denied the state’s application for supervisory writs. The Supreme Court granted the writ application and “remanded to the court of appeal for briefing, argument and an opinion in light of United States v. $8,850 U.S. Currency, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).”[3]
*833 In $8,850 U.S. Currency, supra, the Court held that the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), provides the relevant framework for determining the reasonableness of a delay in filing a forfeiture action. In Barker, the court developed the following four-pronged test to determine whether a government delay has abridged a defendant’s right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant’s assertion of his right; and (4) the prejudice to the defendant.
The initial factor, the length of the delay, is often referred to as the “triggering-mechanism” because absent a “presumptively prejudicial” delay, further inquiry into the Barker factors is unnecessary. See State v. Santiago, 03-0693 (La.App. 4 Cir. 7/23/03), 853 So.2d 671. Under Barker, the peculiar circumstances of the case determine the weight to be ascribed to the length of the delay and the reason for the delay. State v. Reaves, 376 So.2d 136 (La.1979).
In this case, the trial court denied Woods’ motion to dismiss on two separate occasions. Both times, the denial was reviewed by this Court via applications for supervisory writs. In the first instance, we granted the application, made it peremptory and remanded this matter for an evidentiary hearing to determine “whether good cause exists for continuation of the _j_lflaction, and whether [Woods’] due process rights ha[d] been violated by the delay.” State of Louisiana v. $107,156 U.S. Currency, supra. Following the evidentia-ry hearing and the trial court’s denial of the motion, Woods filed another application for supervisory writ. This Court denied that writ application on the showing made, stating:
Under the four-factor test of Barker v. Wingo, 407 U.S. 514[, 92 S.Ct. 2182, 33 L.Ed.2d 101] (1972), and considering applicant’s showing, we detect no abuse of discretion in the trial court’s decision to deny applicant’s motion to dismiss. Under the particular circumstances of this case, we consider the most significant factor to be whether the delay has prejudiced claimant by hampering him in presenting his case at the upcoming trial on the merits of the seizure. We further note that our denial of this writ application on the showing made does not prevent applicant from raising the issue again in the event of any unfavorable decision on the merits and that applicant has other remedies available for any economic losses, including those set forth in La.R.S. 40:2611(L).

State of Louisiana v. $107,156 U.S. Currency, supra.

With the benefit of the full record before us, we now review the trial court’s denial of the motion to dismiss in light of the factors set forth in Barker. The delay between the filing of the in rem action and the date of the hearing was approximately eleven months. This period of delay was significant, and therefore, is presumptively prejudicial under the first factor of Barker, supra,, thereby necessitating further analysis.
Concerning the second Barker prong, the state has provided no meaningful justification for the delay, merely urging that the delays were attributable solely to Woods. According to the state, Woods failed to comply with requests for discovery within a timely manner and continued depositions which had been scheduled for *834 September 7, 2004. Thereafter, InWoods filed a motion to dismiss, followed by two applications for supervisory writs. Unlike in $8,850 U.S. Currency, supra, no criminal charges were pending against Woods which might serve to justify the delay of the civil forfeiture action. Nevertheless, the state correctly argues that trial and hearing dates are within the control of the trial court, and the prosecution has no discretion in setting dates. There is no indication that the state deliberately delayed the trial in an attempt to hamper the defense. See, State v. McDaniel, 340 So.2d 242 (La.1976).
The third element to be considered is the claimant’s assertion of the right to a hearing. In this case, it is clear that Woods attempted to assert his rights. His first motion to set the forfeiture action for trial was dismissed. On August 13, 2004, after the 60-day statutory delay had elapsed, Woods filed a motion to set this matter for trial, and the trial court denied the motion.
The final Barker element to consider is whether Woods has been prejudiced by the delay. The primary inquiry with regard to whether a claimant has been prejudiced is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence. $8,850 U.S. Currency, supra. Such prejudice could be a weighty factor indicating that the delay was unreasonable. Id.
To support his contention that he was prejudiced by the delay, Woods testified that he has been financially burdened by the seizure, and he has been unable to pay his personal and business expenses. However, as noted |12in our previous reasons for the denial of Woods’ applications for supervisory writs, Woods has not shown that he has been prejudiced by the delay, ie., the delay has affected his ability to defend the forfeiture on the merits.
In State v. Love, 2000-3347 (La.5/23/03), 847 So.2d 1198, the Louisiana Supreme Court considered whether an appellate court abused its discretion in overturning a trial court’s denial of a motion to quash where the defendant argued that his right to a speedy trial was violated. The court noted the relationship of the courts and stated:
Because the complementary role of trial courts and appellate courts demands that deference be given to a trial court’s discretionary decision, an appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court’s discretion.
Id., 847 So.2d at 1206.
In State v. Harris, 2003-0524 (La.App. 4 Cir. 9/10/03), 857 So.2d 16, citing Love, supra, the court stated:
Thus, ... the proper approach to the question of whether the defendant’s right to a speedy trial was violated is not merely a review of the dates and circumstances of the hearings, but an examination of the entire record in order to discern whether there was “palpable abuse” on the part of the trial court in granting the motion to quash.
Id., 857 So.2d at 18.
Taking all of the Barker factors into consideration, we cannot say that there was “palpable abuse” on the part of the trial court in denying the motion to dismiss. While the delay between the filing of the in rem action and the hearing was significant, nothing in the record indicates that the bsdelay was deliberate or designed to hamper Woods’ ability to defend the forfeiture or that Woods was prejudiced by the delay. Therefore, this assignment of error is without merit.

*835
Forfeiture

Woods also contends the trial court erred in concluding that the currency was subject to forfeiture under the Forfeiture Act. LSA-R.S. 40:2603 provides:
Any of the following conduct gives rise to forfeiture:
(1) An act or omission punishable by confinement for more than one year under R.S. 40:961 et seq., whether or not there is a prosecution or conviction related to the act or omission.
(2) An act or omission occurring outside this state, which would be subject to prosecution in the place of occurrence and would be described in Paragraph (1) of this Section if the act or omission occurred in this state, whether or not it is prosecuted in any state.
(3) Any act or omission committed in furtherance of any violation of R.S. 40:961 et seq. which is punishable by confinement with or without hard labor, including any inchoate or preparatory offense, regardless of whether there is a prosecution or conviction related to the act or omission.
Civil forfeiture is the process by which governments seize property without compensating its owner, based on its connection with the commission of crime. State v. Edwards, 2000-1246 (La.6/1/01), 787 So.2d 981. There is no prerequisite that a crime be proven before property is subject to confiscation. Id.
Under the original enactment of the Forfeiture Act, the state had the initial burden of showing the existence of probable cause for the forfeiture 114of property. In 1997, the burden of proof for forfeiture was amended by Acts 1997, No. 1334 § 1, which changed the state’s burden of proof from “probable cause” to “preponderance of the evidence.” LSA-R.S. 40:2612(G); State v. 790 Cash, 36,107 (La.App. 2d Cir.6/12/02), 821 So.2d 609; State v. One (1) 1991 Pontiac Trans Sport Van, 98-64 (La.App. 5 Cir. 7/9/98), 716 So.2d 446.
In Young Oil Co. of Louisiana, Inc. v. Durbin, 412 So.2d 620 (La.App. 2d Cir. 1982), this court discussed the distinction between the standards of proof of probable cause and preponderance of the evidence, stating, “Probable cause is not synonymous with ‘preponderance,’ being somewhere between ‘preponderance’ and ‘suspicion.’ ” Id., at 626.
After reviewing the record in its entirety, we find that the state failed to meet its burden of proving that the currency was subject to forfeiture. Although we recognize that carrying such a substantial amount of money in plastic bags in a duffel bag, and the dog’s act of positively alerting to the bag may indicate a connection with illegal drugs, the evidence in this record is insufficient to show that the currency was derived from or intended to be used in a narcotics transaction.
In an effort to show that the currency was derived from drug transactions, the state offered the testimony of Louisiana State Trooper Steve Wallace, who testified that the currency was packaged in a manner which is consistent with “drug money.” Neither the currency nor the bag in which it was contained was tested for drug residue or chemicals.
The state attempted to place the burden of proof on Woods, |-^contending that he failed to prove that the currency was earned through the sale of music CDs. However, Woods’ 2004 Income Tax Return shows a gross income of over $170,000 derived from his legitimate business, RSG Entertainment, LLC. Woods also introduced receipts for business expenditures, investment agreements and other business records. The trial court based its ruling upon the fact that it had “never seen busi *836 ness people do business” with money packaged as in this case.
Woods’ criminal background does not reveal any prior history of drug offenses. Although the amount of cash involved herein and the manner in which it was packaged leads to a suspicion that some illegality may have been involved, based on the evidence presented herein, we cannot say that the state proved that the currency was obtained from drug transactions. Thus, we conclude that the state failed to show, by a preponderance of the evidence, that the currency was subject to forfeiture. Accordingly, we find that the trial court was manifestly erroneous in determining that the currency was subject to forfeiture under the Forfeiture Act.[4]
CONCLUSION
For the foregoing reasons, the judgment of the trial court denying the motion to dismiss is affirmed. However, the judgment ordering forfeiture of the currency is hereby reversed.
AFFIRMED IN PART; REVERSED IN PART.
STEWART, J., concurs with written reasons.

. The actual amount of the currency seized remains in dispute. Woods has filed a lawsuit against Trooper Jordan, alleging that the receipt issued to him failed to include $20,000.

. The court ordered the district attorney to be reimbursed $503.57 and awarded $1,071.56 to the Louisiana District Attorneys Association ("LDAA”), with the remaining balance to be disbursed as follows:
Louisiana State Police O' o
Fourth Judicial District Attorney N> o
Fourth Judicial Criminal Court Fund N> o

. On remand, the court of appeal instructed the trial court to conduct "an immediate evi-dentiary hearing on the forfeiture and to decide whether the delay in holding a forfeiture *833 trial violated the claimant's state or federal rights to due process of law in light of United States v. $8,850, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) and State v. $126,053.00 U.S. Currency, 595 So.2d 1157 (La.1992).”

. Because of our conclusion that the property was not subject to forfeiture, we will not address Woods' argument with regard to the allocations of the forfeited money.