STATE OF LOUISIANA
v.
LOUIS LEGENDRE
No. 2008 KA 2486.
Court of Appeals of Louisiana, First Circuit.
October 27, 2009.
Not Designated for Publication
SCOTT PERRILLOUX, District Attorney, LEANNE MALNAR, PATRICIA PARKER, Assistant District Attorneys, Counsel for Appellee, State of Louisiana.
MICHAEL L. THIEL, SUMMER DUHE, Counsel for Defendant/Appellant, Louis Legendre.
Before: DOWNING, GAIDRY and McCLENDON, JJ.
McCLENDON, J.
The defendant, Louis Legendre, was charged by bill of information with one count of possession of 28 grams or more, but less than 200 grams of cocaine, a violation of LSA-R.S. 40:967(F)(1)(a).[1] He pled not guilty and filed a motion to suppress evidence, but the motion was denied. Thereafter, he withdrew his former plea and pled guilty pursuant to State v. Crosby, 338 So.2d 584 (La. 1976), reserving his right to challenge the trial court's ruling on the motion to suppress, and pursuant to North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). He was sentenced to six years at hard labor without benefit of probation, parole, or suspension of sentence. He now appeals, contending that the trial court erred in denying the motion to suppress. For the following reasons, we affirm the conviction, vacate the sentence, and remand for resentencing.

FACTS
On October 28, 2005, Louisiana State Trooper Chamorro conducted a traffic stop for improper lane usage of a vehicle driven by the defendant and in which Lynx Trivuce[2] was a passenger on 1-12 in Tangipahoa Parish. The defendant had suddenly changed lanes, almost causing a collision with another vehicle. Trooper Chamorro asked the defendant to step out of his vehicle and produce his driver's license. The defendant had an international driver's license, and stated he was from Trinidad. Trooper Chamorro advised the defendant of his traffic violation and asked where he was coming from and where he was going. The defendant initially stated he was coming from Texas and going to Mississippi. He then stated that he was going to Jackson, Mississippi to visit his grandmother, and then to New York. The defendant claimed he was working in Texas for a communication business owned by his friend and was staying in a hotel at his friend's expense. The defendant claimed Trivuce was also working in the same location. The defendant indicated that he had rented the vehicle. He showed signs of nervousness.
Trooper Chamorro approached Trivuce and asked for the rental agreement. The rental agreement indicated someone other than the defendant had rented the vehicle. The defendant then claimed that his secretary had rented the vehicle and added him as an additional driver.
Trivuce indicated he and the defendant were traveling to Mississippi to visit family, but did not know exactly where in Mississippi they were going. Trivuce initially claimed he was not working or going to school. He then stated he was working "for an oil rig," working thirty days on and thirty days off.
Trooper Chamorro requested assistance from "another unit," and Trooper Darryl Davis and his police dog, Spike, who were approximately two miles away, responded. Trooper Chamorro then asked the defendant if he was carrying anything illegal in the vehicle, including marijuana, cocaine, or methamphetamines. The defendant stated, "No." Trooper Chamorro asked the defendant if he would consent to a search of the vehicle. The defendant stated, "Why do you want to search?" and denied consent to search.
Trooper Davis ordered Trivuce to exit the vehicle and allowed Spike to sniff around the vehicle. Spike alerted, consistent with the presence of narcotics, to the trunk of the vehicle. Trooper Chamorro then advised the defendant and Trivuce of their Miranda[3] rights, and they indicated they understood those rights. Trooper Chamorro asked the defendant and Trivuce what was in the trunk of the vehicle. They did not respond. Trooper Chamorro opened the trunk and discovered eleven kilograms of cocaine in a bag. He then arrested the defendant and Trivuce.

MOTION TO SUPPRESS
In his sole assignment of error, the defendant argues that the search of his vehicle violated his rights under the Fourth Amendment because he was detained longer than reasonably necessary to effectuate the purpose of the traffic stop, and certainly long after any suspicions were dispelled.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. LSA-C.Cr.P. art. 703(A). A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jones, 01-0908, p. 4 (La.App. 1 Cir. 11/8/02), 835 So.2d 703, 706, writ denied, 02-2989 (La. 4/21/03), 841 So.2d 791.
Pursuant to the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Louisiana Code of Criminal Procedure article 215.1(A) provides that an officer's reasonable suspicion of crime allows a limited investigation of a person. However, reasonable suspicion is insufficient to justify custodial interrogation even though the interrogation is investigative. State v. Caples, 05-2517, pp. 10-11 (La.App. 1 Cir. 6/9/06), 938 So.2d 147, 154, writ denied, 06-2466 (La. 4/27/07), 955 So.2d 684.
As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. State v. Waters, 00-0356, p. 4 (La. 3/12/01), 780 So.2d 1053, 1056 (per curiam).
During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. LSA-C.Cr.P. art. 215.1(D).
Given the fact-intensive nature of the inquiry into whether a detention constitutes an investigatory stop, by its nature a brief encounter between the police and a citizen based on reasonable suspicion of criminal activity, or an arrest, an extended restraint on liberty which requires a greater showing of probable cause, courts have been unable to develop a bright-line test to determine when police-citizen encounters exceed the bounds of mere Terry stops. Because there is no scientifically precise formula that enables courts to distinguish between valid investigatory stops and other detentions that the law deems sufficiently coercive to require probable cause, a court inquiring into the nature of a forcible detention must examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 LEd.2d 605 (1985) (citations omitted). A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. Id. State v. Miller, 00-1657, pp. 2-3 (La. 10/26/01), 798 So.2d 947, 949 (per curiam).
The defendant filed a general motion to suppress evidence and/or confession. In connection with the motion, he argued the cocaine had to be suppressed because Trooper Chamorro detained him longer than necessary to dispel Trooper Chamorro's reasonable suspicions. The court denied the motion to suppress.
There was no error in the denial of the motion to suppress. The traffic stop of the vehicle driven by the defendant was supported by probable cause to believe that he had violated LSA-R.S. 32:58. See Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Thereafter, Trooper Chamorro's suspicions were aroused by the inconsistent statements concerning who had rented the vehicle, the inconsistent statements concerning Trivuce's employment, and by the defendant's nervousness. Trooper Chamorro was outnumbered by the defendant and Trivuce, neither of whom were restrained in any way. Understandably, he requested backup. It is inconsequential that a K-9 unit arrived to assist him. Thereafter, the dog quickly alerted to the presence of narcotics in the trunk of the vehicle that the defendant had been driving.
Trooper Chamorro diligently pursued his investigation, and the duration of the stop did not transform the encounter into a de facto arrest. His actions following the stop were reasonably responsive to the circumstances justifying the stop in the first place, as augmented by information he gleaned during the stop. See Miller, 00-1657 at p. 3, 798 So.2d at 950. The physical intrusiveness of the defendant's detention did not intensify as the duration of the stop expanded to accommodate Trooper Chamorro's growing suspicions of criminal activity. Neither the defendant nor his passenger were handcuffed or restrained, circumstances which might have suggested during the lengthening delay that a de facto arrest had taken place, until the discovery of the cocaine. See Miller, 00-1657 at p. 5, 798 So.2d at 950. Trooper Chamorro had an objective and articulable basis for detaining the car to maintain the status quo for the few minutes it took Spike to sniff the vehicle, a means of investigation likely to confirm or dispel the officer's suspicions quickly. The dog's sniff test on the vehicle's exterior surfaces did not itself constitute a search, and at the moment the dog alerted, the officers had probable cause to search the car. Exigent circumstances arising from the detention of a vehicle on the open road excused the lack of a warrant. See State v. Kalie, 96-2650, p. 4 (La. 9/19/97), 699 So.2d 879, 881-82 (per curiam).
This assignment of error is without merit.

REVIEW FOR ERROR
Initially, we note that our review for error is pursuant to LSA-C.Cr.P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and "error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." LSA-C.Cr.P. art. 920(2).
The trial court denied the defendant parole for the entire six-year sentence in this matter. However, LSA-R.S. 40:967(G) authorized the denial of parole for only the minimum sentence provided under LSA-R.S. 40:967(F), which was five years. Accordingly, we vacate the sentence and remand for resentencing.
Additionally, we note that the trial court failed to impose the mandatory fine of not less than fifty thousand dollars nor more than one hundred fifty thousand dollars. See LSA-R.S. 40:967(F)(1)(a).
CONVICTION AFFIRMED. SENTENCE VACATED AND MATTER REMANDED FOR RESENTENCING.
NOTES
[1] Lynx Trivuce was charged by the same bill of information with the same offense. The record does not reflect the disposition of the charge against Trivuce.
[2] The record contains multiple spellings of Trivuce's name. We use the spelling contained in the bill of information.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).