JUDE G. GRAVOIS, Judge.
[ ..Defendant, Elbert Chinn, appeals his conviction for possession of marijuana, third offense. On appeal, he argues that the trial court erred in denying his motion to suppress the evidence. Finding no er *841 ror, we affirm defendant’s conviction and sentence.

PROCEDURAL HISTORY

On December 22, 2008, the Jefferson Parish District Attorney’s Office filed a bill of information charging defendant, Elbert Chinn, with one count of possession of marijuana, third offense, in violation of LSA-R.S. ^^(C).[1] Defendant pled not guilty at arraignment. On April 7, 2010, the trial court heard and took defendant’s Motion to Suppress Evidence under advisement. After considering post-hearing memoranda, on February 14, 2011, the trial court denied ^defendant’s motion to suppress, and defendant proceeded to trial. On February 15, 2011, defendant was found guilty as charged by a six-person jury.
Defendant filed a motion for a new trial on February 28, 2011, which was denied on March 17, 2011. On March 21, 2011, the trial court sentenced defendant to five years imprisonment at hard labor to run consecutively with the sentence imposed under case number 09-2876.[2] Also on that date, the State filed a multiple offender bill of information alleging defendant to be a third felony offender pursuant to LSA-R.S. 15:529.1. After conducting a multiple offender hearing, the trial court found defendant to be a third felony offender. The trial court then vacated defendant’s original sentence, and sentenced him to serve fourteen years and four months at hard labor without the benefit of probation or suspension of sentence, giving defendant credit for time served. The trial court further ordered defendant’s sentence to run consecutively with any sentence imposed under case number 09-2876.[3] Defendant made an oral motion to reconsider sentence, which the trial court denied.[4] On April 1, 2011, defendant timely filed a motion for appeal that was granted.

FACTS

Officer Christine Urrata of the Kenner Police Department testified that on the night of November 22, 2008, she observed a vehicle fail to stop at a stop sign located at the corner of Martinique Avenue and Driftwood Boulevard in Kenner, Louisiana. Officer Urrata activated her patrol lights and conducted a traffic stop of |Bthe vehicle.[5] Upon approaching the driver’s • side of the vehicle to request identification and vehicle documentation, Officer Urrata testified that when the driver rolled down his *842 window, she “immediately noticed a strong odor,” which based on her experience as an officer of thirteen years, “has been associated with that of burnt marijuana.”[6]
Officer Urrata then returned to her vehicle to conduct a records check on defendant and to call for backup from canine Officer Louis Lynn, who arrived while she was writing the traffic citation.[7] Officer Lynn testified that when he arrived, he spoke with Officer Urrata and learned that defendant’s vehicle had been stopped for a stop sign infraction, after which she detected a “narcotic odor” coming from the vehicle. Officer Lynn performed a safety check around the perimeter of the vehicle and then allowed his canine to “run on the outside of the vehicle.”[8] After Officer Lynn’s canine “alerted” to the passenger’s side door, his canine was permitted to enter the interior of the vehicle where the canine alerted to the center console area. Officer Lynn testified that he searched the area the canine had alerted to, and in between the center console and the driver’s seat recovered a partially smoked, hand-rolled burnt marijuana cigarette.
Shortly thereafter, a crime scene technician arrived and field-tested the hand-rolled cigarette, which tested positive for marijuana.[9] After confirming this information, both Officers Urrata and Lynn approached defendant to advise him of | fitheir findings, and while speaking with defendant, noticed a very foul odor that smelled of “burnt marijuana” coming from his breath. Defendant was asked to open his mouth, at which time, with the aid of a flashlight, both officers noticed green particles that appeared to be marijuana in his teeth and under his tongue. Defendant was then placed under arrest.[10]

COUNSELED AND PRO SE ASSIGNMENTS OF ERROR

In both his counseled and pro se assignments of error, defendant argues that the trial court erred in denying his motion to suppress the evidence. He argues that his detention and the subsequent “probable cause” search of his vehicle with a drug detection dog was illegal, and as such, the evidence retrieved from the vehicle constituted “fruits of the poisonous tree” that should therefore be suppressed. Specifically, defendant contends that the traffic stop exceeded constitutional bounds when the officer detained and delayed defendant based on what she believed to be the smell of marijuana while waiting for the canine unit. Defendant asserts that the officer should have written him a citation, and either obtained a warrant to search the vehicle or asked for defendant’s consent; *843 thus, without a warrant or consent, defendant’s Fourth Amendment rights were violated. Finally, defendant contends that neither the “plain smell” nor the automobile exceptions apply to the instant matter.
In response, the State contends in brief that Officer Urrata observed defendant commit a traffic violation, and therefore, possessed the requite probable cause to stop defendant. Further, the State argues that when she detected the strong odor of marijuana coming from defendant’s vehicle, Officer Urrata formed | Treasonable suspicion of additional criminal activity that justified detaining him for a period of time longer than reasonably necessary to complete the traffic stop. The State also submits that Officer Urra-ta’s detection of the marijuana odor falls within the “plain smell” exception to the warrant requirement, providing Officer Urrata with probable cause to search the vehicle. Additionally, the State contends that the automobile exception to the warrant requirement applies to the present matter. Moreover, the State asserts that a drug detection dog’s sniffing around the exterior of a vehicle does not constitute a search, and that a subsequent “hit” by the drug detection dog provides the officer with probable cause to search the vehicle for contraband.
Officer Urrata was the sole witness to testify at the suppression hearing. She testified similarly to her testimony at trial. She testified that on the night of November 22, 2008, she observed a black vehicle run a stop sign. She then conducted a traffic stop of the vehicle and when approaching the vehicle to request the driver’s pertinent documentation, detected a “strong odor” that in her experience as a police officer she associated with burnt marijuana. Upon detecting the odor, Officer Urrata testified that she returned to her police unit and conducted a records check of the driver where she learned that he had previously been arrested for narcotics violations. Based on the records check and the odor of marijuana, Officer Urrata requested the assistance of a canine officer. When the canine officer arrived at the scene, the driver was asked to exit his vehicle while the canine conducted its search. The canine search revealed a rolled cigarette between the seat and the center consol. The cigarette field-tested positive for marijuana. Officer Urrata further testified that upon speaking with defendant, she noticed “little particles on his teeth,” in addition to a strong odor of marijuana coming from his mouth.
|sOn cross-examination, Officer Urrata testified that she did not recall whether defendant was asked permission to search his vehicle. Officer Urrata also testified that a search warrant was not obtained prior to conducting the search of defendant’s vehicle.
On the morning of trial, the trial court denied defendant’s Motion to Suppress Evidence.
Defendant asserts that further detention of defendant beyond the scope of the traffic stop and based on the officer’s smelling of marijuana was unlawful. Thus, without obtaining a warrant or consent from defendant to search the vehicle, the subsequent search was involuntary and in violation of his Fourth Amendment rights. Defendant argues that because the officer had no legal justification for detaining defendant, the evidence should have been suppressed and the ruling of the trial court reversed.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. War-rantless searches and seizures are per se unreasonable unless justified by one of the *844 exceptions to the warrant requirement. State v. Wolff, 09-508 (La.App. 5 Cir. 12/29/09), 30 So.3d 897, 901.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Bellow, 07-824 (La.App. 5 Cir. 3/11/08), 982 So.2d 826, 829.
|flThe right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity is recognized by LSA-C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Generally, the decision to stop a vehicle is reasonable when the police have probable cause to believe a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). The standard is purely objective and does not take into consideration the subjective beliefs or expectations of the detaining officer. State v. Waters, 00-0356 (La.3/12/01), 780 So.2d 1053, 1056 (per curiam).
In the present case, Officer Urrata testified that she pulled defendant over because he failed to stop at a stop sign. Thus, without regard to Officer Urrata’s subjective intent, defendant’s failure to stop at a designated stop sign gave the officer probable cause basis to pull over the vehicle for a traffic violation. State v. Lopez, 00-0562 (La.10/30/00), 772 So.2d 90, 92 (per curiam); Wolff, 09-508, 30 So.3d at 902; and Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) (“Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.”).
Additionally, LSA-C.Cr.P. art. 215.1(D) states that in conducting a traffic stop “an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity.” Here, upon stopping defendant’s vehicle to conduct the traffic stop, Officer Urrata detected a strong odor of burnt marijuana coming from the vehicle. She conducted a criminal records check on defendant, noting that defendant had | mseveral prior narcotics arrests. Based on this information, Officer Urrata had reasonable suspicion of additional criminal activity to justify the enlargement of the scope of her investigation and the request for aid by the canine unit. State v. Burton, 93-0828 (LaApp. 3 Cir. 2/23/94), 640 So.2d 342, writ denied, 94-0617 (La.4/7/94), 641 So.2d 203. Additionally, the arrival of the drug detection dog on the scene within thirty-four minutes of the stop afforded Officer Urrata the opportunity to “pursue a means of investigation that was likely to confirm or dispel [her] suspicions quickly” without unnecessary delay. United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).[11] (See also State v. Barlow, 00-1657 (La.App. 3 Cir. 6/27/01), 792 So.2d 63, writ denied, 01-2104 *845 (La.5/31/02), 817 So.2d 89, finding the deputy’s physical description of the defendant provided the deputy with reasonable suspicion that something else such as contraband might have contributed to his state. That alone, the Third Circuit noted, would justify a few moments of further detention at the scene of the traffic stop while a drug dog could circle the vehicle. Id., 00-1657, 792 So.2d at 66. Further, see State v. Miller, 00-1657 (La.10/26/01), 798 So.2d 947, 951, in which the Louisiana Supreme Court held that the length of the defendant’s detention, fifty-three minutes from the initial, routine traffic stop until the canine alerted on the defendant’s trunk, did not convert the encounter into a de facto arrest.[12])
Officer Urrata’s reasonable suspicion of criminal activity then escalated to probable cause when Officer Lynn’s canine alerted to the passenger’s side door. It is well established that a dog’s sniffing around the exterior of a vehicle does not hfitself constitute a search. United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983). The canine’s alert was consistent with the officer’s testimony that she detected a strong odor of marijuana, which then gave the officers probable cause to search the interior of the vehicle for contraband. Even without the use of the drug dog and its alert on the exterior of defendant’s vehicle, Officer Urrata possessed probable cause to search defendant’s vehicle based on her detection of a “strong odor of burnt marijuana” emanating from defendant’s vehicle when he rolled the window down. Courts have consistently held that the odor of marijuana provided the officers with sufficient probable cause to conduct warrant-less searches of the vehicles in question. See State v. Mitchell, 10-334, p. 8 (La.App. 5 Cir. 10/26/10), 52 So.3d 155, 160, writ denied, 11-355 (La.12/2/11), 76 So.3d 1170.[13]
Defendant argues that a search warrant should have been obtained prior to searching defendant’s vehicle. However, the search was conducted pursuant to the “automobile exception” to the warrant requirement. The Louisiana Supreme Court has recognized that the inherent mobility of a vehicle ánd the risk of losing evidence because of this mobility have prompted courts to allow police to conduct an immediate warrantless search with probable cause. State v. Long, 03-2592, p. 10 (La.9/9/04), 884 So.2d 1176, 1183 n. 6, cert, denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005). The Louisiana Supreme Court has also recognized that there is no constitutional distinction between seizing and holding a car before presenting the probable cause issue to a magistrate and immediately searching the vehicle without a warrant. See State v. Thompson, 02-0333 p. 10 (La.4/9/03), 842 So.2d 330, 337-38 (quotation omitted); State v. Tatum, 466 So.2d 29, 31 (La.1985). Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. Tatum, supra.
*846 In the present case, defendant committed a traffic violation that gave Officer Urrata probable cause to stop defendant’s vehicle. Officer Urrata testified both at the suppression hearing and at trial that she noticed a strong odor of marijuana coming from defendant’s vehicle when he rolled his window down, which gave Officer Urrata reasonable suspicion to enlarge the scope of her investigation. Moreover, upon the canine unit’s arrival at the scene, the drug detection dog alerted to defendant’s vehicle, indicating the possible presence of narcotics and providing the officers with probable cause to search for contraband. Additionally, as determined by the Louisiana Supreme Court in Lopez, supra, since defendant’s car was readily mobile and on the open road, the circumstances in this case excused the warrant requirement for a search otherwise based on probable cause. Thus, the trial court properly denied defendant’s Motion to Suppress the Evidence, and the evidence seized was the result of a lawful stop and search of defendant’s vehicle.
Attached as a “supplemental page” to his pro se brief, defendant contends that his due process rights were violated when the arresting officers failed to inform him of his Miranda rights.[14] Specifically, defendant contends that the testimony of Officers Urrata and Lynn indicate that it was not until after the vehicle was searched and the contraband retrieved that defendant was placed under arrest.
Prior to trial, defendant filed a Motion to Suppress Confession on the basis that the confession was not voluntarily obtained and was made without defendant | ^having been advised of his rights. However, the record in this case does not show that defendant made a statement or a confession.
Further, it appears that defendant is arguing that Officer Urrata should have read him his Miranda rights prior to conducting the search of his vehicle. However, the trial testimony in this case indicates that defendant was not under arrest or handcuffed at the time the search was conducted. The testimony established that defendant was asked to exit his vehicle for safety reasons while the canine performed its search. Following the lawful stop of defendant’s vehicle for the traffic violation, the officer was authorized to order defendant out of the vehicle. State v. Smith, 07-815, p. 5 (La.App. 5 Cir. 3/11/08), 982 So.2d 821, 825, writ denied, 08-0927 (La.11/14/08), 996 So.2d 1088. It was not until the contraband was recovered and the officers smelled marijuana on defendant’s breath and saw green particles in his teeth that defendant, as he concedes in his brief, was placed under arrest. Thus, since defendant was not undergoing a custodial interrogation at the time of the search of his vehicle, Officer Urrata was under no legal obligation to Mirandize defendant prior to the search.
Additionally, it is noted that the evidence introduced at trial indicates that defendant was advised of his rights after his arrest by Officer Urrata and that he signed a written waiver of rights form. Thus, defendant’s argument set forth in his “supplemental page” lacks merit.

ERRORS PATENT REVIEW

Defendant requests an errors patent review in accordance with LSA-C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
|14A review of the record reveals that defendant was not advised of his multiple offender rights at the habitual offender proceeding as required by LSA- *847 R.S. 15:529.1(D)(l)(a). Generally, the failure of the trial court to advise the defendant of his right to a hearing and his right to remain silent is not considered reversible error where the defendant’s habitual offender status is established by competent evidence offered by the State at a hearing rather than by admission of the defendant. State v. Bell, 03-217 (La.App. 5 Cir. 5/28/03), 848 So.2d 87, 90. Here, the State introduced proof of defendant’s identity to the alleged predicate offenses through certified conviction packets and the testimony of fingerprint expert Donna Quintanilla. Thus, we find that the failure to advise defendant of his right to remain silent is not reversible because defendant’s habitual offender status was established by competent evidence offered by the State at a hearing rather than by admission of defendant.

CONCLUSION

For the foregoing reasons, defendant’s conviction and sentence are affirmed.

AFFIRMED

. Pursuant to the bill of information, defendant is alleged to have been previously convicted of possession of marijuana in the 24th Judicial District Court, Parish of Jefferson, under case number 06-0818, and in the Criminal District Court, Parish of Orleans, under case numbers 426-383 and 406-196.

. The original minute entry from the sentencing hearing indicates that the trial court ordered defendant’s sentence to run concurrently to any sentence imposed under case number 09-2876; however, as per a nunc pro tunc minute entry of the court correcting the March 21, 2011 sentencing minutes, the court ordered that defendant’s sentence run consecutively to any sentence imposed under case number 09-2876.

. The original minute entry from the sentencing hearing indicates that the trial court ordered defendant’s sentence to run consecutively to any sentence imposed under case number 08-6437; however, as per a nunc pro tunc minute entry of the court correcting the March 21, 2011 sentencing minutes, the court ordered that defendant’s sentence run consecutively to any sentence imposed under case number 09-2876.

. Defendant also filed a written motion to reconsider sentence on March 28, 2011, which the trial court also denied.

. Officer Urrata testified that defendant was the only occupant in the vehicle when she conducted the stop. However, the defense called Rene Lewis in its case-in-chief, who testified that he was in the vehicle with defendant at the time the police stopped and arrested defendant.

. On cross-examination, Officer Urrata testified that the vehicle defendant was driving was not registered to defendant.

. Officer Lynn testified that he has been employed by the Kenner Police Department for 16 years, that for seven or eight of those years, he has worked as a canine handler, and that he has specialized training in canine handling as it relates to narcotics detection and apprehension.

. Officer Lynn also testified that for safety purposes, all occupants are asked to exit the vehicle prior to any search being performed by the canine. In this case, Officer Lynn testified that defendant exited the vehicle pri- or to conducting the search.

. Both parties stipulated to the crime lab report, indicating that had Thomas Angelica testified, he would have been qualified as a forensic scientist expert and would have testified that the green vegetable matter contained in the hand-rolled cigarette tested positive for marijuana.

. The defense stipulated that defendant was previously convicted of three possession of marijuana charges in case number 06-0818 in the 24th Judicial District Court for the Parish of Jefferson, and case numbers 426-383 and 406-196 in the Criminal District Court for the Parish of Orleans.

. In Sharpe, supra, the United States Supreme Court recognized that an investigatory stop that continues indefinitely will at some point no longer be justified as an investigatory stop. In determining whether a detention is too lengthy to be considered an investigatory stop, it is appropriate to examine whether or not the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. Sharpe, 470 U.S. at 686, 105 S.Ct. 1568.

. The Miller court stated that, although the length of the stop was nearly an hour at that point, its duration was reasonably correlated with the escalating level of suspicion as the officers pursued a means of investigation likely to confirm or dispel the trooper’s suspicions without unnecessary delay. Id.

. (citing State v. Garcia, 519 So.2d 788, 794 (La.App. 1 Cir.1987), writ denied, 530 So.2d 85 (La.1988); See also State v. Rodriguez, 530 So.2d 85 (La.1988); State v. Johnlouis, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, 1161-63, writ denied, 10-0097 (La.6/25/10), 38 So.3d 336, cert, denied, — U.S. -, 131 S.Ct. 932, 178 L.Ed.2d 775; State v. Allen, 10-1016 (La.5/7/10), 55 So.3d 756 (per curiam); and State v. Williams, 38,379 (La.App. 2 Cir. 11/25/03), 858 So.2d 878, 880-81, writ denied, 03-3535 (La.3/12/04), 869 So.2d 807).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).